DECIDED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

(*Continued from Volume 54*)

---

FARMER v. CHRISTENSEN et al.

No. 3280.  /Decided July 9, 1919.  (183 Pac. 328.)

1. PARENT AND CHILD—RIGHT TO CUSTODY. Other things equal, the natural parent of a child is entitled to its care, custody, and control, but may by agreement or conduct deprive himself of his natural right to confer it upon others; the guiding principle always being the best interests of the child for the present and future.[1]  (Page 5.)

2. PARENT AND CHILD—RIGHT TO CUSTODY. Divorced father of boy living with his maternal grandmother and his mother's second husband *held* entitled to the custody of the boy in order that he might be adopted by his father's sister and her husband, fit persons by character and means, and anxious to have the child, despite a strong affection between the boy and his stepfather and grandmother.  (Page 7.)

Appeal from District Court, Third District, Salt Lake County; *R. B. Porter*, Judge.

Suit by George F. Farmer against John W. Christensen and another.  From judgment for petitioner, defendants appeal.

---

[1] *Stanford* v. *Gray*, 42 Utah, 228, 129 Pac. 423, Ann. Cas. 1916A, 989; *Hummel* v. *Parish*, 43 Utah, 373, 134 Pac. 898.

(1)

REMANDED- with directions to strike a finding from the record, and judgment otherwise AFFIRMED conditionally.

*Rogers & Haas* of Salt Lake City, for appellants.

*Ray Van Cott* of Salt Lake City, for respondent.

GIDEON, J.·

George F. Farmer filed a petition in the district court of Salt Lake county, Utah, against John W. Christensen and Mrs. G. A. Almquist, designated herein as defendants. The petitioner alleged that Joseph Harry Farmer, of the age of ten years is his son and is unlawfully detained and restrained of his liberty by defendants. Defendants answered, admitting that petitioner is the father of the child, but denied his right to its custody, and also denied that said child was unlawfully restrained by them. A hearing was had before the district court, and the custody of the minor awarded to petitioner. From that judgment defendants appeal.

The petitioner, in the year 1902, was married to Emma Farmer, the mother of the child. Two children were born of that marriage, a son now fourteen years of age and the child involved in this litigation, who was ten years old in September, 1917. The eldest son, not in any way involved in these proceedings, at the age of two and one-half years, became seriously sick with spinal meningitis. That disease left him entirely deaf. During such sickness he was taken to the home of a Mrs. Jacobsen, a sister of petitioner, and he has remained in that home and been cared for by that worthy woman and her husband ever since. The petitioner has at no time contributed to the support of this afflicted son. Petitioner and his wife lived together until 1909. During that year the mother of the child refused to continue the marital relation with the petitioner, and thereafter, in the year 1912, filed a complaint for divorce in the district court of Salt Lake county, charging cruel treatment and failure to provide her with the common necessaries of life. A decree of

divorce was granted plaintiff, the former wife of petitioner herein. She was awarded custody of the two children. Subsequent to that, in the year 1915, the mother of the child married defendant John W. Christensen. The mother was then in poor health, and thereafter, in the fall of 1916, died. From and prior to the date of the marriage, the minor child had been a. member of the household of Christensen, and said minor has since said time, at the date of filing this petition, and at the date of trial, resided, and at this time resides, at the home of said Christensen. The defendant Mrs. Ahnquist is the mother of the former wife of Farmer and grandmother of the child. Said grandmother, after the marriage of Christensen and the boy's mother, resided and had her home with them. She has continued since the death of her daughter to reside at the home of said Christensen and has cared for and been the companion of the boy during all that time. A strong attachment and affection exist betwen the grandmother and the child as well as between the child and defendant Christensen. The boy is, for such reason, extremely anxious that he be permitted to continue to make his home with his said grandmother and stepfather.

The petitioner is a resident of Idaho. He has never remarried. He frankly admitted during the trial that he is not situated so that he can provide a good home for his son Joseph or give him the care and attention that he desires the child should have. It also appears, and is so stated by the petitioner, that he desires that the boy shall be adopted by one Samuel M. Taylor and his wife, Ada F. Taylor, residents of Salt Lake City. It likewise appears in the record that the father, prior to trial, executed the necessary relinquishment of said minor child and consented that he might be adopted by Taylor and wife. Mr. and Mrs. Taylor are well-to-do people, about forty years of age, and have no children of their own. They own a good home. Mr. Taylor has an income of $2,500 a year independent of his wife's income. He testified, and that is not disputed, that he has property worth $20,000. Said Taylor and wife, in their testimony, expressed a very ardent desire to adopt this boy and make him their

heir. They both expressed a liking and affection for the child and felt sure that they could do better for him in the way of furnishing a home, education, and general moral training than he would likely receive from those in whose custody he now is.

The grandmother is now over seventy years of age. The stepfather was thirty-one at the date of trial. The grandmother is without property, and, the district court found, is quite feeble. Mr. Christensen owns his home and has some other property. He is an industrious, and, as appears from the record, a very kind and considerate man. He is deeply attached to the boy, and the district judge stated in summing up the case that his conduct toward and treatment of the child have been most considerate; that because of said conduct and treatment there has grown up between him and the boy a strong attachment, and the boy, for that reason, is extremely reluctant to leave his home.

During the oral argument it was suggested, and consented to by both parties, that the members of this court could, if they so desired, either collectively or individually, talk to the child and learn his wishes and feelings respecting the parties to these procedings. Accordingly the Chief Justice and the writer of this opinion have had a personal interview with the boy. He is an exceptionally bright child. The result of that interview confirms what is apparent all through the record, the desire of the boy to be left where he is, his strong affection for his grandmother and stepfather, and the considerate treatment which the child has been receiving.

The record discloses that, so far as the father of the child is concerned, his conduct during the life of the boy's mother, both before the divorce and afterwards, and his neglect of the child since the death of its mother, have been such that he is entitled to very little, if any, consideration respecting the future care or custody of the child. The record abundantly, in my judgment, proves that the boy's mother was not only justified in refusing to continue the marital relations with the boy's father, but that his treatment was such that she could not, without being subjected to neglect and cruel

treatment, do otherwise. The boy was born in 1907. He was therefore two years old when his mother refused to live longer with his father. The testimony abundantly establishes the fact that during the time from the child's birth until his mother left his father the father drank to excess, neglected his family, did not provide the child either with clothing or other necessaries of life as he ought to and could have done; that after his wife separated from him until the date of the trial he did not trouble himself to know whether the child was clothed or fed. The most that it is contended he had contributed to the support of his wife or the child, notwithstanding his wife was sick in the fall of 1909, was the sum of thirty-two dollars at that time and sixteen dollars at a later date. If this controversy were between the father and the defendants, no court, in my judgment, would hesitate in dismissing the petition.

It is true, everything else being equal, that the natural parent of a child is entitled to its care, custody, and control. This court, however, by its former decisions, is committed to the more humane doctrine that in cases of this nature the natural parent may, by agreement or by conduct, deprive himself of his natural right and confer it upon others; that in cases where the parent has lost that right either by agrement or conduct the guiding principle will always be the best interests of the child for the present and its future. *Stanford* v. *Gray,* 42 Utah, 228, 129 Pac. 423, Ann. Cas. 1916A, 989; *Hummel* v. *Parrish,* 43 Utah, 373, 134 Pac. 898.

Under the facts as appearing in this record it is not easy to determine just what disposition should be made of the child. The fact is that the litle boy, to a great extent, is a stranger to Mr. and Mrs. Taylor. True, he has visited their place a few times in years gone by, but as he testified, he does not now know where their present residence is located. Very naturally, by reason of the treatment of his stepfather and his grandmother, a strong affection exists between them. It will be with grief and no little heart burning that the grandmother is parted from him or he from her as well as

from the stepfather. Nevertheless the future interests of the child must control the actions or order of the court.

The district court after a hearing running over a period of several days, concluded that the interests of the child, both present and future, would be best subserved by granting the claim of the petitioner. The grandmother, in the very nature of things, can live only a few years longer. She is without property for her own support and cannot be of any help in the future education of the child. The defendant Christensen is a young man and in all probability will marry again. Doubtless it is his intention to do everything within his means or power to provide the little boy with a home and to educate him and treat him as though he were his own child. What a change in Mr. Christensen's domestic relations might bring to the boy or the treatment he might receive in his new home are, to say the least, problematical. On the other hand, the record shows that Mrs. Taylor is related to the boy by blood, being a sister of the boy's father. Both Mrs. Taylor and her husband are anxious to adopt the child, and, as they both testified, treat him as their own child. They are able to do much more for him in a material way than either or both of the defendants. If, however, there were no other reasons than material benefit the court would not be justified, for that reason alone, in awarding them the custody of the child. No word of suspicion is found in the entire case against the character of either Taylor or his wife. The lower court evidently did, and so must this court, accept their statements that the little boy will be treated with every consideration and kindness and that every effort will be made by them tending to promote the present happiness and future usefulness of the child, and that his surroundings will be of such a pleasant nature and such kindness and consideration will be shown him as will cause him to become attached to and fond of his adopted parents. Without that assurance the court would not be justified in awarding them the custody of the child.

Moreover, it is in evidence, and in fact it is apparent from the entire record, that the relationship existing be-

tween the families of Mr. and Mrs. Taylor and that of          2
Mrs. Jacobsen is most intimate and cordial. As stated
herein, the elder brother of this minor is now, and has been
since he was of the age of about three years, making his
home with Mrs. Jacobsen. It is in every way desirable that
the two children should know more of each other than they
do under the present arrangement, or are likely to if this
little boy continues to make his home with defendants. Con-
ceding the delicacy of taking the child from his present sur-
roundings, I am, nevertheless, in considering the future in-
terests and well-being of this child, clearly of the opinion
that it will be for his best interests that his future should be
with the family of his uncle and aunt, and that the district
court was justified in the decree entered.

The record in this case is voluminous, covering nearly 800
typewritten pages. Very much testimony was offered by
both parties respecting the wishes of the mother of the child
as expressed by her during her last illness. Mrs. Taylor tes-
tified that the mother at various times appealed to her to
care for her son Joseph. Likewise Mrs. Jacobsen testified
that the mother of the child said to her, not only once, but
repeatedly, that she wished that she (Mrs. Jacobsen) might
give the boy a home, and if she could not, that Mrs. Taylor
would. On the other hand, the grandmother, the stepfather,
and a Mrs. Dahl, a sister of the boy's mother, testified that
frequently during the mother's sickness she expressed a re-
quest and desire that the child should continue to remain
with the stepfather and the grandmother. I have little doubt
that all these witnesses were testifying truthfully, notwith-
standing the apparent conflict. The mother seemed to feel
that her eldest child was and would be provided with a home
and cared for by Mrs. Jacobsen. Let me pause at this place
to remark that Mrs. Jacobsen stands out in this record by far
the worthiest and most unselfish character mentioned. The
future of the republic will be better anchored if her kind is
multiplied. The mother's chief anxiety seems to have been,
during her last sickness, concerning the future of this little
boy. She knew he had nothing to expect from his father.

She knew that Mrs. Jacobsen, in addition to rearing a family of her own, had cared for her afflicted child practically since his birth and could not, and ought not be required to, take on additional burdens. The mother was racked by pain and was much of the time not herself mentally. Under such circumstances it is not at all surprising that she made these apparently contradictory pleas. All of this testimony may have been of but little help to the court in determining the conflict between the parties respecting the future interests of the child. The district court, however, deemed it of sufficient importance to make a finding that the deceased had on numerous occasions "requested that her son Joseph be taken, cared for, and reared by Mrs. Jacobsen or by Mrs. Taylor." The court could, with equal propriety, have made a finding that she made the same request of the other parties to this proceeding.

The lower court, doubtless by adopting findings prepared by counsel for petitioner, found that the mother of the child, about the month of July, 1909, left the home of the petitioner without his fault and contrary to his wishes, and that the petitioner had, up until the date of their separation, supported and maintained his wife and child to the best of his ability. That finding is wholly immaterial to the question to be determined. In addition to that, in my judgment, it is contrary to not only the findings of the district court in the divorce proceeding, but is against the great weight of the evidence in this action. Moreover, it is an unnecessary and unjust reflection upon a woman who has passed to the great beyond and is not in court to defend herself against any such accusation. It should be annulled and stricken from the findings made by the court.

It also appears in the record, as indicated above, that Mr. Taylor and his wife have filed a petition in the district court of Salt Lake county for the adoption of this little boy, and that the father, petitioner herein, has filed a relinquishment of all his right or claim to the boy and consented to his adoption by Taylor and wife. It is not apparent that any order of adoption was ever made. It also appears that Mr. Chris-

tensen has filed a petition with a view of adopting the child, but as I understand, both of these proceedings are held in abeyance pending this appeal. It sufficiently appears from what has been said that this court would not favorably consider awarding the custody of the child to the petitioner, except as that may be a medium for his adoption by Taylor and wife.

For the foregoing reasons the case is remanded to the district court of Salt Lake county, with directions to strike from the record the finding relating to the abandonment of the petitioner by his wife as indicated above. Otherwise the judgment is affirmed conditionally that an order of adoption of the child on the part of Mr. Taylor and wife be filed in this proceeding within thirty days after the remititur from this court has reached the district court. If no such order of adoption is so filed, the district court is directed to set aside its former order and judgment and dismiss the petition. Neither party will recover costs on appeal.


CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.