411 P.2d 839

**In re STATE of Utah, in the Interest of R—— L——, a minor child.**

**No. 10368.**

Supreme Court of Utah.

March 9, 1966.

S. Reed Murdock, of Henriksen & Murdock, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Chief Justice:

Appeal from a juvenile court decree permanently depriving the mother of custody of her minor child, R. L., and placing it with the State Welfare Department for adoption. Affirmed, with no costs awarded.

This case, like most custody cases, is a heartbreaker, taxing the wisdom of a decision of the juvenile court and of this court on review. Difficulty is that many

1. A very good statement apropos of the case here is found in Crouch v. Pixler, 83 Ariz. 310, 320 P.2d 943 at 946 (1958).

times we have to decide cases looking to future child welfare in the light of past history. This is that type of case.

The minor in this case was a youngster, who at age 7, not only had a cerebral palsy problem, but who on competent believable evidence, was not taken care of properly by two alcoholic parents, and hence was allowed to roam around unattended at a tender, dangerous and impressionable age. Upon complaint properly filed and pursued, the parents were deprived of the child's custody. There followed several hearings at which the parents were either somewhat incoherent or did not appear. There seems to be no good reason to indulge in specifics concerning the dates or evidence attendant on those hearings, which for about a year and a half indicated that this child was better off elsewhere than with its natural parents. However, a petition was filed by the mother praying for restoration of custody, set for April 8, 1964, based on rehabilitation of the mother. She failed to appear at the hearing. Her attorney, who *did* appear, told the court the mother had called shortly before the time for hearing stating that she was in a small town about five miles away, had run out of gas, but would appear shortly. The court, after an hour and 15 minutes, entered her default, and a week later entered a decree permanently depriving her of custody of this child, doing the only sensible thing it could,

—telling the Welfare Department to find a good home for this child—which the evidence indicates the latter did.

Without explanation or contact with the court after the failure to appear, appellant married an Idaho man 52 years of age (she being 41), who, so far as the record shows, is a sober, good man, willing to support appellant's child, whom he has never seen. Three months after this marriage, and seven months after her unexplained failure to appear, he and appellant both petitioned the court for custody of the subject minor child, and after a hearing where he and appellant testified, documentary evidence and reports from social agencies and friends were introduced, the juvenile court, on March 22, 1965, affirmed its position as to custody. The case, through other counsel, was appealed to this court on April 21, 1965, and it was not until December 6, 1965, over seven months later, that counsel for the parties finally joined issue in this court, which thereupon set the matter for argument at the earliest available date,—February 14, 1966,—two months later. At that time the child was about 10 years old and had spent about half its sensory life with foster parents to whom the evidence indicates it became very much attached, and where it appears care and affection were wholesome.

Under the record and circumstances of this case we feel we would be amiss

to reverse the juvenile court on grounds it was arbitrary and capricious, claimed as such under the so-called presumption of natural affinity between parent and child, and an obvious reference to parts of the record more favorable to appellant. Although we agree with the presumption urged by counsel for appellant, we cannot say it is a conclusive one, otherwise the chaos in applying such a principle would be obvious.

McDONOUGH, CROCKETT, WADE and CALLISTER, JJ., concur.