432 P.2d 879

In re STATE of Utah In the Interest of Ronald JENNINGS and Donald Jennings, Minors, Myrtle Jennings, Appellant.

No. 10799.

Supreme Court of Utah.

Oct. 23, 1967.

Galen Ross, Salt Lake City, for appellant.

Gordon B. Christenson, County Atty., Phil L. Hansen, Atty. Gen., Robert J. Stansfield, Asst. Atty. Gen., Salt Lake City, for respondent.

ELLETT, Justice:

The appellant is the mother of twin boys born out of wedlock. When they were

one year old, they were adjudicated neglected and dependent children and were placed in the temporary custody of the Utah State Department of Public Welfare. Since that time they have been kept in foster homes, although appellant has kept in touch with them by visiting with them on weekends, until she was requested to visit every other week because of adverse influence had upon the kiddies.

In July, 1966, the Welfare Department filed a petition praying for termination of the appellant's rights to her children and seeking to have them placed for adoption. In August of 1966 the appellant petitioned for permanent custody of the children, or failing in that regard, to have temporary custody. A hearing was had in the Juvenile Court in December of 1966. The appellant's petition was denied, and a decree was entered terminating permanently all of her parental rights in and to the children. The effect of the order is this: If the children are placed for adoption, no notice need be given to her, and her consent thereto is not required in order for the adoption to be completed.

The appellant has five other children, and prior to the filing of the petitions herein, she had requested the Welfare Department to place these other five children in foster homes. However, she withdrew this request before any action was taken thereon. At the time the twin boys were taken from her, she was on welfare but has since obtained employment at the Hill Air Force Base and has a take-home pay of $315.00 per month. During the time the children were in foster homes, she has contributed only the sum of $225.00 toward the support of the two children, all of which was given prior to September, 1965.

The children are healthy and happy in their foster-home environment at the present time, although they were upset and confused at the time they were placed in foster homes and for about a year thereafter.

 Hearings in Juvenile Court proceedings involving custody of children are not adverse but are highly equitable in nature and are designed to inquire into the welfare of the children. State in the Interest of K— B—, 7 Utah 2d 398, 326 P.2d 395. This court under its present holdings has the right to review findings of fact made by inferior courts in equity matters, and the appellant urges us to do just that and to substitute our own judgment as it is influenced by the cold record for that of the Juvenile Court judge, who had the advantage of hearing the witnesses testify and seeing their response while on the witness stand. Because of the advantage possessed by the trial judge, we feel reluctant to change his findings unless we are convinced that they are not supported by the evidence.

On September 27, 1963, the appellant was tested by a clinical psychologist with a Ph. D. degree, whose report was made

available to the Juvenile Court judge. Therein he stated:

> Although diagnostic labels are notoriously unreliable, Mrs. Jennings' present adjustment can be characterized as an acute schizophrenic reaction in a person who is generally lacking in favorable psychological features. She is both highly disturbed and distressed. Although some ego defenses are being maintained, they are more in the service of how she wants to appear rather than in the service of actually fighting for a mastery of her problems.

A professional social worker with a Master of Arts degree in social work testified that he as a professional social worker for the Family Service Society of Utah had been counselling the appellant regarding how she might get her two children back. In response to a question as to whether she should have further counselling, he said, "I think that definitely she should receive counselling for herself. * * * I think she doesn't completely understand about child care, but I do feel that right at the present time she is functioning a great deal more adequately than she has in the past."

When asked how long he estimated she would need to have counselling, he testified: "That would be difficult to say. At least until the satisfaction—I really can't say because I think it would be almost in terms of years."

. The Juvenile Court found that the mother continues to be emotionally unstable, that she has failed to provide a suitable environment for the children, and that she is unable to provide proper supervision and discipline for them.

While ordinarily the parents have a right to the custody of their children, the State also has an interest in the welfare of children, which is paramount thereto. It goes beyond the natural right and authority of the parent to the child's custody, and so children may be taken away from parents in proper circumstances. Our own Legislature has enacted Section 47, Chapter 165, Laws of Utah 1965, which reads in part as follows:

> (1) The court may decree a termination of all parental rights with respect to one or both parents if the court finds:
>
> (a) That the parent or parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child; * * *

While there is evidence that the appellant has made some improvement in her condition, it is not made to appear that she is competent to have the rearing of these twin boys.

A further factor which did influence the Juvenile Court in making its determination was the fact as found that the children were illegitimate and sired by an unknown father.

■ We think the findings and decree of the Juvenile Court are supported by the evidence, and we do not believe that they should be changed. It is, therefore, ordered that the judgment of the Juvenile Court is affirmed. Each party will bear its own costs.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.