Rosemary HUTCHISON, Plaintiff and Appellant,

v.

Dale Harry HUTCHISON, Defendant and Respondent.

No. 17439.

Supreme Court of Utah.

June 14, 1982.

Richard B. Johnson, Provo, for plaintiff and appellant.

Wayne B. Watson, Orem, for defendant and respondent.

OAKS, Justice:

This controversy between former spouses over the custody of a child born to the wife before their marriage requires us to clarify the legal standard governing a child-custody dispute between a parent and a nonparent.

Appellant, Rosemary, gave birth to Lacey Hutchison in February, 1975. In September, 1975, Rosemary married respondent, Dale Hutchison. Two more children were born during the course of their marriage. In February, 1980, the parties were divorced. Trial evidence showed that Dale had damaged property, struck Rosemary, and harshly disciplined the children. Other evidence showed that Rosemary was a heavy drinker, had left home for days at a time without explanation, and had neglected the children. Dale was granted temporary custody of all three children, but the resolution of permanent custody was deferred pending a blood test on Lacey's paternity and home evaluations by the Department of Family Services (DFS). The blood test excluded Dale as Lacey's father.

Thereafter, on November 12, 1980, the district court granted Dale permanent custody of all three children, subject to reasonable visitation rights in Rosemary. The order was not accompanied by formal findings of fact and conclusions of law. In a memorandum decision, the district court stated that Dale's name appears on Lacey's birth certificate; that he has "in every way" treated the child as his own; and that, although the blood test excluded him as Lacey's natural father, she considers him her father both psychologically and biologically.[1] Based on trial testimony and on reports of a psychiatrist and a DFS social worker, the court determined "that the best interests of the minor children would be served by their placement with the defendant [Dale] and that all three children should remain together for their mutual benefit and well-being." The memorandum decision further stated:

> [I]n weighing the interests of the minor children in this situation the welfare of the three is paramount over any superior right the plaintiff [Rosemary] may have to the custody of the child where it is determined that the defendant [Dale] is the better custodial parent for his two natural children by the plaintiff, as well as the child in question [Lacey].

Rosemary challenges only that portion of the order granting Lacey's custody to Dale. Specifically, she contends that the mother of an illegitimate child cannot be deprived of custody of her child absent a showing of unfitness or abandonment.

■ We cannot agree with either the district court's or Rosemary's characterization of the standard governing custody disputes between a parent and a nonparent. The court's standard was solely the best interests of the child. The standard Rosemary advocates is, in effect, the standard governing actions for involuntary and permanent termination of all parental rights to a child, which requires a showing of parental unfitness, abandonment, or substantial neglect. U.C.A., 1953, § 78–3a–48(a) (1965); *In re J. P.*, 648 P.2d 1364 (Utah 1982).

■ Loss of custody is less drastic than the permanent termination of parental rights. The custody determination is not permanent, since it expires automatically when the child comes of age, and it is reversible prior to that time. Most importantly, loss of custody does not deprive the noncustodial parent of all rights in relation to the child. *See* U.C.A., 1953, § 78–3a–2(10); *In re J. P.*, supra, n. 1. For these reasons, a parent may be deprived of custody on a less compelling showing than is required for termination of all parental rights.

■ In a controversy over custody, the paramount consideration is the best interest of the child, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent. *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).[2] This presumption recognizes "the natural right and authority of the parent to the child's custody . . . ." *State in re Jennings*, 20 Utah 2d 50, 52, 432 P.2d 879, 880 (1967). It is rooted in the common experience of mankind, which teaches that parent and child normally share a strong attachment or bond for each other, that a natural parent will normally sacrifice personal interest and welfare for the child's benefit, and that a natural parent is normally more sympathetic and understanding and better able to win the confidence and love of the child than anyone else. *Walton v. Coffman*, 110 Utah at 13, 169 P.2d at 103.

---

**1.** However, Dale states in his brief that he "does not here seek custody as one who has allegedly adopted the child by acknowledgement" but rather "as a third party with whom the child should be placed in the best interest of the child."

**2.** This statement of the standard is typical of many American jurisdictions. For a survey of jurisdictions, *see* Comment, "Psychological Parents vs. Biological Parents: The Courts' Response to New Directions in Child Custody Dispute Resolution," 17 J. of Fam.L. 545, 552–74 (1979). *See also* Annot., 31 A.L.R.3d 1187 (1970).

■ The parental presumption is not conclusive, *State in re R____ L____*, 17 Utah 2d 349, 411 P.2d 839 (1966), but it cannot be rebutted merely by demonstrating that the opposing party possesses superior qualifications, has established a deeper bond with the child, or is able to provide more desirable circumstances. If the presumption could be rebutted merely by evidence that a nonparent would be a superior custodian, the parent's natural right to custody could be rendered illusory and with it the child's natural right to be reared, where possible, by his or her natural parent.

■ Consistent with its rationale, the parental presumption can be rebutted only by evidence establishing that a particular parent at a particular time generally lacks all three of the characteristics that give rise to the presumption: that no strong mutual bond exists, that the parent has not demonstrated a willingness to sacrifice his or her own interest and welfare for the child's, and that the parent lacks the sympathy for and understanding of the child that is characteristic of parents generally. The presumption does not apply to a parent who would be subject to the termination of all parental rights due to unfitness, abandonment, or substantial neglect, since such a parent is *a fortiori* not entitled to custody.

■ If the presumption in favor of the natural parent is rebutted, the contestants for custody compete on equal footing, and the custody award should be determined solely by reference to the best interests of the child.

■ Some factors the court may consider in determining the child's best interests relate primarily to the child's feelings or special needs: the preference of the child; [3] keeping siblings together; [4] the relative strength of the child's bond with one or both of the prospective custodians; [5] and, in appropriate cases, the general interest in continuing previously determined custody arrangements where the child is happy and well adjusted.[6] Other factors relate primarily to the prospective custodians' character or status or to their capacity or willingness to function as parents: moral character and emotional stability; [7] duration and depth of desire for custody; [8] ability to provide personal rather than surrogate care; [9] significant impairment of ability to function as a parent through drug abuse, excessive drinking, or other cause; [10] reasons for having relinquished custody in the past; [11] religious compatibility with the child; [12] kinship,[13] including, in extraordinary circumstances, stepparent status; [14] and financial condition.[15] (These factors are not necessarily listed in order of importance.)

■ Assessments of the applicability and relative weight of the various factors in a particular case lie within the discretion of the trial court. "Only where trial court action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment."

3.  *Henderson v. Henderson*, Utah, 576 P.2d 1289 (1978).

4.  *Jorgensen v. Jorgensen*, Utah, 599 P.2d 510 (1979) (Crockett, C. J., concurring); *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).

5.  *Walton v. Coffman*, note 4, *supra*.

6.  *Nielsen v. Nielsen*, Utah, 620 P.2d 511, 512 (1980); *In re Cooper*, 17 Utah 2d 296, 410 P.2d 475 (1966); *Application of Conde*, 10 Utah 2d 25, 347 P.2d 859 (1959).

7.  *Kallas v. Kallas*, Utah, 614 P.2d 641 (1980); *Knapp v. Knapp*, 73 Utah 268, 273 P. 512 (1928); *Jorgensen v. Jorgensen*, note 4, *supra*.

8.  *State in re R____ L____*, 17 Utah 2d 349, 411 P.2d 839 (1966); *Walton v. Coffman*, note 4, *supra*.

9.  *Lembach v. Cox*, Utah, 639 P.2d 197 (1981).

10.  *Kallas v. Kallas*, note 7, *supra*; *Walton v. Coffman*, note 4, *supra*.

11.  *Application of Conde*, note 6, *supra*; *Baldwin v. Nielson*, 110 Utah 172, 170 P.2d 179 (1946).

12.  *See* U.C.A., 1953, § 78–3a–39(12).

13.  *In re Cooper*, note 6, *supra*.

14.  *Gribble v. Gribble*, Utah, 583 P.2d 64 (1978).

15.  *Walton v. Coffman*, note 4, *supra*.

*Jorgensen v. Jorgensen*, Utah, 599 P.2d 510, 512 (1979).

■ The trial court must enter specific findings on the factors relied upon in awarding custody. In *Chandler v. West*, Utah, 610 P.2d 1299, 1301 (1980), we set aside an order that refused to modify a property settlement provision in a divorce decree but did not enter written findings. In remanding, we stated: "For this Court to be in a position to review the propriety of the trial court's order, it is necessary that proper findings of fact and conclusions of law be made pursuant to Rule 52(a), Utah Rules of Civil Procedure." In *Stoddard v. Stoddard*, Utah, 642 P.2d 743 (1982), we required written findings to accompany an order modifying a child support provision in a divorce decree. This requirement of written findings applies with even greater force to orders awarding or modifying the custody of a child.

■ In this case, the district court addressed the question of the best interests of the child without first determining whether the presumption in favor of the natural parent had been rebutted. On the present record—especially in the absence of findings of fact—we are unable to determine whether, under the standard discussed in this opinion, Rosemary is entitled to the benefit of the parental presumption. We therefore vacate the court's order and remand for further proceedings (including the taking of additional evidence, if necessary) consistent with this opinion. No costs awarded.

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.