Rosemary J. BONWICH, Plaintiff and Respondent,

v.

Christopher BONWICH, Defendant and Appellant.

Nos. 19592, 19804.

Supreme Court of Utah.

April 8, 1985.

Robert N. Macri, Salt Lake City, for defendant and appellant.

Pete N. Vlahos, Ogden, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from a decree of divorce awarding custody of his minor son to plaintiff, the child's adoptive mother. Plaintiff cross-appeals from the property division ordered in the decree.

Plaintiff and defendant were both Air Force officers of approximately the same rank and pay grade when they married in Florida in 1981. A few weeks later, defendant adopted plaintiff's ten-year-old son, Lawrence, and plaintiff adopted defendant's son, Bryan, who was born three days after the parties married. Bryan was born out of wedlock to another woman. Defendant and Bryan's natural mother had tentatively agreed prior to Bryan's birth to his adoption by a childless couple. When the couple declined to adopt him because they wanted a girl, plaintiff contacted Bryan's natural mother who consented to plaintiff's adoption of Bryan. A little more than a year after the marriage, plaintiff instituted

divorce proceedings that culminated in the decree here appealed.

Defendant contends that it was error to award his biological child to plaintiff, an adoptive parent, absent some "special showing of incompetence" of the biological parent. He claims that the custody award resulted from outdated gender biases which are constitutionally impermissible.

In determining custody of minor children under Utah law, a trial court "shall consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties." U.C.A., 1953, § 30–3–10, as amended. The trial court here found that plaintiff had more warmth for the children than defendant, that the children were closer to her, that the maternal grandmother was a dedicated grandparent, that the child Lawrence had almost a paternal feeling toward his little brother and felt very responsible for him, that the mother's nurturing qualities were greater than those of the father, and that it was in the best interests of both children to leave them in the custody of the mother during the school year or the "stable period of the year" and give the father liberal visitation rights during the summer. Accordingly, the court awarded custody of Bryan to plaintiff, subject to visitation with defendant for the months of May through August, with additional reasonable visitation rights in both parties during the times the child was with the other parent.

In *Jensen v. Jensen*, Utah, 660 P.2d 240 (1983), we reiterated and adhered to our long-held principle of extending to the trial court broad discretion in determining child custody. Citing *Jorgensen v. Jorgensen*, Utah, 599 P.2d 510 (1979), we stated that the best interests of the child frequently turn on numerous factors that the trial court is best suited to assess, given its proximity to the parties and the circumstances, and concluded that "[o]nly where trial court action is so flagrantly unjust as to constitute an abuse of discretion should the appellate forum interpose its own judgment." *Id.* at 511, 512. *See also Bushell*

*v. Bushell,* Utah, 649 P.2d 85 (1982); *Kallas v. Kallas,* Utah, 614 P.2d 641 (1980).

Defendant nonetheless urges us to apply a stricter standard here and to entertain a presumption in favor of the biological parent. He relies on *Hutchison v. Hutchison,* Utah, 649 P.2d 38 (1982), where we stated that "the paramount consideration is the best interest of the child, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent." *Id.* at 40. *See also Cooper v. DeLand,* Utah, 652 P.2d 907 (1982), and *Tuckey v. Tuckey,* Utah, 649 P.2d 88 (1982). However, those cases do not apply to the fact situation here, as they dealt with the conflicting custodial claims of a parent and a nonparent. They must be narrowly read in their context where no adoption had taken place.

▆▆▆ Plaintiff adopted Bryan in Florida. The judgment of adoption created same relationship between her and the child that would have existed had Bryan been her legitimate blood descendant. Fla. Stat. § 63.172(1)(c) (1983). That judgment affects the status of Bryan and receives full faith and credit in our forum. *In re Duquesne's Estate,* 29 Utah 2d 94, 505 P.2d 779 (1973). Although defendant did not adopt Bryan under Florida law, adoption by acknowledgment is recognized under Utah law and confers on an illegitimate child the civil and social status of a legitimate child of the natural father. U.C.A., 1953, § 78–30–12;[1] *Mace v. Webb,* Utah, 614 P.2d 647 (1980). Consequently, the legal relationship between plaintiff and defendant on the one hand and Bryan on the other has been, since the time of adoption and reception into the family, that of parents and child. Under both Utah and Florida laws, the status of an adopted child is in all respects identical with that of a natural child. The relationship of the adoptive parent and the child is the same legally as that of natural parent and child, with all the rights and all the duties of that relationship. U.C.A., 1953, § 78–30–10; Fla. Stat. § 63.172(1)(c) (1983). That status remains inviolate irrespective of a subsequent divorce. The presumption favoring a natural parent over a nonparent is therefore inapplicable, and both parties came to court in this divorce action on equal footing.

▆▆▆ The trial court did not abuse its discretion in giving overriding priority to the best interests of the child over the desires of defendant. Without discounting or even questioning the strong affection defendant bears for his son, plaintiff, as an adoptive mother, could well harbor feelings of equal intensity.[2] The trial judge articulated his reasons, which appear earlier in this opinion, for making the custody award as he did. They fully support his decision. He also stated his reasons for granting the four-month visitation right to defendant. The record is devoid of any sexist biases or prejudices. All statements made with respect to the better primary caretaker refer to *this* defendant and to *this* plaintiff and are substantiated by close observations of the family constellation.

As we recognized in *Hutchison v. Hutchison, supra,* despite the blood relationship, a strong mutual bond does not always develop between natural parent and child. If, indeed, as defendant so stoutly maintains, that bond manifests itself strongly as Bryan grows, that will be an appropriate time for the trial court under its continuing jurisdiction to consider whether defendant should be granted custody. For now, how-

---

1. Section 78–30–12 reads as follows:

   Adoption by acknowledgment.—The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth.

   The foregoing provisions of this chapter do not apply to such an adoption.

2. See the comment by Justice Crockett in *In re Adoption of D,* 122 Utah 525, 252 P.2d 223 (1953), that "[m]any parents who have had both natural and adopted children attest that it was impossible to make a distinction between the affection they have for the natural and the adopted children."

ever, Bryan is a three-year-old boy, quite unaware of the difference between how he is related to a loving mother and a loving father with whom he divides his time and who both furnish him superior care. Would that all children fare so well.

Plaintiff cross-appeals that she was denied an equitable division of certain assets of the marriage, but she does not attack the overall division of property as being inequitable or unfair. She refers to an exhibit placed in evidence, but that exhibit is not before us and has not been made part of the designation of record on appeal. The trial judge has considerable latitude in dividing the marital assets of the parties. His actions are indulged with a presumption of validity. *Searle v. Searle*, Utah, 522 P.2d 697 (1974). Here, he endeavored to divide in an equitable manner the assets the parties had accumulated during their short marriage. We are precluded from substituting our own judgment absent a showing of inequity which has not been made.

The decree is affirmed. No costs are awarded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.