**Karla KISHPAUGH (Kornmayer),**
**Plaintiff and Respondent,**

v.

**Richard Bruce KISHPAUGH,**
**Defendant and Appellant.**

No. 20423.

Supreme Court of Utah.

Nov. 6, 1987.

ZIMMERMAN, Justice:

Richard Kishpaugh appeals an order awarding custody of his natural child, Brian Kishpaugh, to William and Kathryn Kornmayer, the boy's maternal grandparents. Richard challenges the trial court's finding that the presumption in favor of a natural parent, most recently articulated by this Court in *Hutchison v. Hutchison*, 649 P.2d 38 (Utah 1982), had been rebutted and that it was in the best interests of the child to award custody to the maternal grandparents. We affirm the trial court.

Brian Kishpaugh was born on February 18, 1976. He has cerebral palsy and a severe hearing impairment that has rendered him functionally deaf. His parents, Richard Kishpaugh and Karla Kornmayer Kishpaugh, were divorced in 1981. Karla was awarded custody of Brian. Because of illness, however, Karla never assumed actual custody of the child. Since the divorce, Brian has resided in Chico, California, with Mr. and Mrs. Kornmayer, Karla's parents, and Mrs. Kornmayer's mother, Mrs. Landrum. For the three years between the divorce and the filing of the petition to change custody, Richard knew that the Kornmayers had actual custody of Brian and were caring for him. During this period, Richard maintained contact with Brian. He visited during Thanksgiving and Easter recesses and on several weekends a year, and he had the child in his custody for varying periods of time during the summers. Until Richard filed his petition in 1984, the Kornmayers were unaware that he wanted custody of Brian.

In April of 1984, Richard refused to return Brian to the Kornmayers after an Easter visit. The Kornmayers obtained a temporary restraining order requiring Richard to return Brian to the Kornmayer home in Chico. Richard then filed a petition to modify the divorce decree to change custody. The Kornmayers responded by filing a petition to obtain guardianship over Brian after it was determined that Karla would not be able to resume actual custody of Brian because of chronic illness.

The district court heard both matters together and entered detailed findings and conclusions disposing of both petitions. It first recognized that under *Hutchison*, there is a presumption that custody of a child should be awarded to a natural parent. In the present case, however, the court found that presumption to have been rebutted. It then proceeded to determine which placement was in Brian's best interests, treating the contestants as though they were on an equal footing. Custody was awarded to the Kornmayers. This appeal followed.

A long line of Utah cases deals with child custody disputes between natural parents and persons other than natural parents. Although a review of these decisions shows that the results depended heavily on the facts, this Court has consistently stated that there is a presumption in favor of a natural parent who has the care, custody, and control of his or her child. *See, e.g., Farmer v. Christensen*, 55 Utah 1, 5, 183 P. 328, 330 (1919); *Hummel v. Parrish*, 43 Utah 373, 134 P. 898 (1913); *Stanford v. Gray*, 42 Utah 228, 236–37, 129 P. 423, 426 (1912) (quoting *Legate v. Legate*, 87 Tex. 248, 28 S.W. 281 (1912)); *accord State ex rel. R.L.*, 17 Utah 2d 349, 411 P.2d 839 (1966); *Walton v. Coffman*, 110 Utah 1, 12–13, 169 P.2d 97, 102 (1946); *Wallick v. Vance*, 76 Utah 209, 228–29, 289 P. 103, 110 (1930); *Kurtz v. Christensen*, 61 Utah 1, 10, 209 P. 340, 344 (1922). These cases run the factual gamut from permanent deprivation of custody, *e.g., State ex rel. R.L.*, to a simple change of custody, *e.g., Walton v. Coffman*.

The rationale for the presumption is that it will normally serve the best interests of the child, which is the governing consideration in custody cases.

In a controversy over custody, *the paramount consideration is the best interest of the child*, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent. *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).... [This presumption] is rooted in the common experience of mankind, which teaches that parent and child *normally* share a strong attachment or bond for each other, that a

natural parent will *normally* sacrifice personal interest and welfare for the child's benefit, and that a natural parent is *normally* more sympathetic and understanding and better able to win the confidence and love of the child than anyone else.

*Hutchison,* 649 P.2d at 40 (footnote omitted) (emphasis added).

 The presumption favoring natural parents is analogous to the presumption favoring an existing custody arrangement. Like the natural-parent presumption, the existing-placement presumption is based on the assumption that it will normally serve the best interests of the child. *See, e.g., Kramer v. Kramer,* 738 P.2d 624, 626 (Utah 1987); *Id.* at 628 (Stewart, J., concurring in the result); *id.* at 629 (Howe, J., concurring in the result); *Fontenot v. Fontenot,* 714 P.2d 1131, 1133 (Utah 1986); *Becker v. Becker,* 694 P.2d 608, 610 (Utah 1984); *Hogge v. Hogge,* 649 P.2d 51, 54 (Utah 1982). The existing-placement presumption must be overcome by a showing of changed circumstances before a court may apply the best-interests test to a petition for a change of custody. *See, e.g., Fontenot,* 714 P.2d at 1132–33; *Becker,* 694 P.2d at 610; *Hogge,* 649 P.2d at 53–54. Similarly, in the absence of a strong showing rebutting the natural-parent presumption, custody disputes will be disposed of in accordance with that presumption because we assume that such a disposition will be in the best interests of the child.

 In *Hutchison,* this Court set out, in what appears to be a more rigid formulation than that in prior cases, a test for rebutting the presumption. *Hutchison* identified three characteristics of the parent-child relationship that must be found lacking before a natural parent's presumptive right to custody can be considered rebutted:

> [T]he parental presumption can be rebutted only by evidence establishing that a particular parent at a particular time generally lacks all three of the characteristics that give rise to the presumption: [i] that no strong mutual bond exists, [ii] that the parent has not demonstrated a

willingness to sacrifice his or her own interest and welfare for the child's, and [iii] that the parent lacks the sympathy for and understanding of the child that is characteristic of parents generally.

649 P.2d at 41. Under *Hutchison,* therefore, a trial court may base a custody award on its own determination of the best interests of the child only if it finds all three enumerated characteristics lacking.

Against this background, we consider the present case. The trial court expressly found that two of the three characteristics mentioned in *Hutchison* were lacking. It found that Richard had failed "to sacrifice his own interest and welfare for the child's interest and welfare" and that Richard "lacks the sympathy for and understanding of the child that is characteristic of parents generally." The trial court did not expressly find that no strong mutual bond existed between Richard and Brian. However, the court did enter specific findings regarding the bonds between Brian and the various parties. Findings of fact 10, 11, and 12 state that "there is love between defendant and his son," that "a deep bond of love exists between the minor child and his grandparents," and that "there is a stronger bond between the minor child and the petitioners than with the defendant."

Richard contends that to comply with *Hutchison,* the trial court must make an express negative finding with respect to all three characteristics. Because only two of the three required negative findings were made, Richard argues, the natural-parent presumption has not been overcome. Therefore, the trial court erred in evaluating his claim and that of the Kornmayers on an equal footing.

In response, the Kornmayers argue that the district court's findings substantially comply with *Hutchison.* The last two *Hutchison* findings were expressly made, and findings of fact 10, 11, and 12, when taken together, amount to a finding that no strong mutual bond existed between Richard and Brian. The Kornmayers also urge that substantial evidence supports each of these findings, as well as the finding that

Brian's best interests would be served by placing him with them.

No case since *Hutchison* has considered the application of its three-pronged test. In both *Cooper v. DeLand,* 652 P.2d 907 (Utah 1982), and *Tuckey v. Tuckey,* 649 P.2d 88 (Utah 1982), the decisions of the lower courts were remanded for further findings consistent with the test set forth in *Hutchison.* In neither case did we elaborate on the *Hutchison* test or have occasion to apply it. Therefore, our case law is silent on whether *Hutchison*'s three negative findings must be made in an almost mechanical fashion before a trial court can properly conclude that the presumption in favor of the natural parent has been overcome.

*Hutchison* itself indicates that it does not establish a wooden formula to which all trial court findings must conform. In discussing the three-pronged test, *Hutchison* states that "the parental presumption can be rebutted only by evidence establishing that a particular parent at a particular time *generally* lacks all three of the characteristics that give rise to the presumption...." 649 P.2d at 41 (emphasis added). Obviously, a "general" lack is not an absolute lack. Thus, the standard articulated in *Hutchison* is somewhat flexible.

This reading of *Hutchison* is supported by the rationale for the presumption: that the three characteristics will "normally" inhere in a relationship between a natural parent and child and will serve to further the best interests of the child. *See Hutchison,* 649 P.2d at 40. A determination that one such characteristic is lacking can be made neither with mechanical precision nor in a vacuum that excludes consideration of other characteristics. Such a determination requires an overall evaluation of the relationship between the parent and the child. *Hutchison* assures that a trial court will focus on three central characteristics in making its evaluation; however, the purpose of the presumption—furthering the best interests of the child—is in no way advanced by requiring a formulaic statement of the trial court's conclusions regarding those characteristics.

This conclusion is supported by a review of the portion of *Walton v. Coffman* paraphrased in *Hutchison* and on which *Hutchison* relies for the rationale underlying its three-pronged test. *Compare Walton,* 110 Utah at 13–14, 169 P.2d at 103, *with Hutchison,* 649 P.2d at 40–41. *Walton* does not support a mechanical application of the test, and the same certainly is true of the prior Utah cases on which *Walton* relied. *See Wallick v. Vance,* 76 Utah 209, 289 P. 103 (1930); *Farmer v. Christensen,* 55 Utah 1, 5, 183 P. 328, 330 (1919); *Hummel v. Parrish,* 43 Utah 373, 134 P. 898 (1913) (quoted in *Kurtz v. Christensen,* 61 Utah 1, 209 P. 340 (1922)); *Stanford v. Gray,* 42 Utah 228, 129 P. 423 (1912) (quoting *Legate v. Legate,* 87 Tex. 248, 28 S.W. 281 (1912)).

It must also be kept in mind that our decision in *Hutchison* did not purport to change prior Utah law. It only restated the settled rule that there is a presumption in favor of the natural parent that must be overcome before a court determining custody can rely solely on the best interests of the child. This rule was restated in the context of reversing a trial court decision that had ignored the presumption entirely. Therefore, *Hutchison* should not be read as materially altering the fact-dependent evaluation of the circumstances of the child and the contesting parties that has always attended the natural-parent presumption in Utah.

Based on the foregoing, we conclude that the natural-parent presumption has been rebutted when a court finds a general lack of the three characteristics that *Hutchison* mentions and that we assume normally inhere in the relationship between a natural parent and a child.[1] In

---

1. We have not hesitated to find the presumption inapplicable when we have concluded that it does not serve the best interests of the child in a particular class of cases. For example, in *Bonwich v. Bonwich,* 699 P.2d 760, 762 (Utah), *cert.* denied, 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 117 (1985), we held that the *Hutchison* presumption applies only when the custodial conflict is between a parent and a nonparent. Because *Bonwich* involved a conflict between a natural

the present case, the trial court found, in the precise language used in *Hutchison,* that Richard lacked two of the three characteristics. With respect to the third—"that no strong *mutual* bond exists" between the natural parent and the child—the trial court did find that Brian felt love for Richard. It did not, however, characterize the bond as a "strong mutual" one. On the other hand, it found that there was a "deep bond between" Brian and his grandparents. Given the inherent imprecision of words when used to characterize emotional attachments and the highly fact-dependent, interdependent, and individualized nature of these determinations, we conclude that the trial judge's findings, read as a whole, satisfy the requirements of *Hutchison* and the case law that it summarized.

■ Richard next contends that the record does not adequately support the factual findings underlying the trial court's determination that the presumption had been rebutted. Although the record contains evidence that would support findings in Richard's favor, it also contains evidence that supports the trial court's findings. On balance, we cannot say that the district court's findings are so lacking in support as to be "clearly erroneous," as required by Utah Rule of Civil Procedure 52(a). *See, e.g., Lemon v. Coates,* 735 P.2d 58, 60 (Utah 1987); *Ashton v. Ashton,* 733 P.2d 147, 149–50 & n. 1 (Utah 1987). Therefore, the trial court did not err in finding that the natural-parent presumption was rebutted.

■ Richard's final argument is that the trial court erred in deciding that Brian's best interests required placement with his grandparents. As we have noted many times, "the best interests of the child frequently turn on numerous factors that the trial court is best suited to assess, given its

proximity to the parties and the circumstances." *Bonwich v. Bonwich,* 699 P.2d 760, 761 (Utah), *cert. denied,* 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 117 (1985); *accord Jorgensen v. Jorgensen,* 599 P.2d 510, 511–12 (Utah 1979). So long as the trial court has not abused its discretion, we will not substitute our judgment about the propriety of its custody award.[2] *E.g., Jorgensen,* 599 P.2d at 511–12.

Having reviewed the trial court's findings of fact and conclusions of law and having considered the record evidence, we conclude that the trial court's findings are adequately supported by record evidence and cannot be termed "clearly erroneous" under rule 52(a). Nor can we characterize its decision to award custody of Brian to the Kornmayers as one that resulted from either a failure to follow appropriate standards or an abuse of discretion. The trial judge was certainly within bounds when he relied heavily on the fact that the Kornmayers had developed a warm and stable relationship with Brian as a result of having taken care of him for more than three years between the time of the divorce and the time when Richard finally decided to seek custody, on the fact that Brian preferred to live with the Kornmayers, and on the fact that the Kornmayers had done a "fantastic job" of caring for this handicapped child. As we have observed before, stability in placement is a very significant consideration in determining child placement. *See, e.g., Kramer,* 738 P.2d at 626; *Fontenot,* 714 P.2d at 1133.

We have considered Richard's other arguments and find them to be without merit. The judgment of the court below is affirmed.

DURHAM, J., concurs.

STEWART, Associate C.J., concurs in the result.

---

and an adoptive parent, the trial court properly placed both parents on an equal footing and based its custody award on a determination of the best interests of the child. In so holding, we took the position that lawful adoption creates a relationship equivalent to that between a natural parent and a child and, therefore, that the assumption that the "best interests of the child"

would be served by placement with the natural parent was inapplicable.

2. Of course, the trial court must exercise its discretion in accordance with any applicable standards we have set. *See, e.g., Smith v. Smith,* 726 P.2d 423, 425 (Utah 1986); *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985); *Wiese v. Wiese,* 699 P.2d 700, 701 (Utah 1985).

HOWE, Justice, dissenting:

I dissent. There is nothing in the trial court's findings of fact or in the evidence which supports the conclusion of that court and a majority of this Court that the presumption in favor of the natural parent has been overcome.

The trial court found that the defendant father "has failed to sacrifice his own interest and welfare for the child's interest and welfare" and "lacks the sympathy for and understanding of the child that is characteristic of parents generally." However, none of the other findings of fact provide any supporting reasons or basis for those findings. On the contrary, every other finding of fact and the undisputed evidence indicate that there was little or nothing lacking about the father.

When the divorce was granted to the plaintiff in June of 1981 and she was given custody of Brian, she was living in Salt Lake City. She still lived there at the time of the change of custody hearing held November 22, 1984. However, she had sent Brian early on to Chico, California, to live with his great-grandmother, Ona Landrum, during the week and with the plaintiff's parents, William and Karla Kornmayer, on weekends. In order to be closer to Brian so that he could visit him often, the father quit his employment in Salt Lake City and moved to Reno, Nevada, where his parents resided. In the approximately three years between the time the divorce was granted and the father brought this petition for change of custody, he made the 360–mile round trip from Reno to Chico ten or twelve times. In addition, each year he brought Brian to Reno at Easter and Thanksgiving and each summer for a visit. In 1983, Brian was with his father three weeks in Reno and, in 1984, six weeks. During these extended visits, they went camping, bike riding, and picnicking in the out-of-doors. The father purchased two bicycles for his son, one housed in Reno and one in Chico. He gave his son gifts on his birthday and at Christmas. He learned sign language so that he could communicate with him. In 1983, he wrote his son five letters and, in 1984, ten letters. Because the boy is deaf, telephone calls were not possible. The trial court found that father and son had a "good relationship" and that there was love between them. The financial ability and good moral character of the father have not been questioned.

Against that backdrop of evidence of concern and love, one is left to wonder what more this father could have and should have done for his son. In its memorandum decision, the trial court noted that the defendant "has failed to pay his child support payments for Brian's care." However, the court also found that in the two- and one-half-year period prior to January 1, 1984, the father paid his ex-wife $6,430 for child support, none of which she sent on to her grandmother or her parents who actually were caring for Brian. After that, the father endeavored to send the child support directly to Brian's great-grandmother with whom he was living, but she refused the payments. While the father may have erred in his judgment not to continue to send child support payments to his ex-wife, his discontinuing payments cannot be said to indicate any lack of love or concern on his part for his son since the money was not being used for his care. Counsel for the Kornmayers suggests in her brief that the father could have visited his son more often and could have written him more letters. There is nothing in the findings of fact which would indicate that the trial court thought that the father's performance in these regards was deficient. I certainly cannot say that under the circumstances, he should have visited and written more often.

In sum, there are no reasons of any substance why this father should be denied custody of his son. If the presumption reiterated in *Hutchison v. Hutchison*, 649 P.2d 38 (Utah 1982), is to mean anything at all, it certainly cannot be rebutted for the insubstantial reasons which are suggested here. I cannot subscribe to the majority's reasoning that although the trial court found that love existed between the defendant and his son, it did not measure up to the "strong mutual bond" which *Hutchison* requires. Of course, since Brian had

lived with his great-grandmother and his grandparents for over three years and he had never lived with his father, his strong attachment to them would only be natural and expected. However, that fact does not reflect adversely on the father who, for a noncustodial parent, had established a good, loving relationship with his son.

Brian is fortunate in that there are two good homes available to him. The custody evaluation showed that Brian would do equally well in either home. The great-grandmother and the maternal grandparents are entitled to high marks for their devotion to this child. I can appreciate the reluctance of the trial court and the majority of this Court to disturb a child's living environment which is wholesome and in which he is happy. The trial judge noted in his memorandum opinion that "this case presents one of the most difficult decisions this court has had to make. Not that the facts are that difficult nor is the law that complicated, but the emotional concern for the subject of this case presents the gravest of concern." Nevertheless, the law of this state is that a child of a marriage terminated by divorce should live with one of his parents if either is willing and capable of caring for the child. Without taking anything away from the "fantastic" job done by the great-grandmother and the grandparents, the father here is unquestionably entitled to custody.

As was sagely pointed out in *Hutchison v. Hutchison, supra,* by Justice Oaks:

> The parental presumption is not conclusive, *State in re R.L.,* 17 Utah 2d 349, 411 P.2d 839 (1966), but it cannot be rebutted merely by demonstrating that the opposing party possesses superior qualifications, has established a deeper bond with the child, or is able to provide more desirable circumstances. If the presumption could be rebutted merely by evidence that a nonparent would be a superior custodian, the parents' natural right to custody could be rendered illusory and with it the child's natural right to be reared, where possible, by his or her natural parent.

My review of the cases decided by this Court on the issue before us, as cited in the majority opinion, reveals that parents have been denied custody only when they have been guilty of abandonment or neglect, have failed to financially support the child, or were frequently intoxicated. I have been unable to find any case where a parent has been stripped of the right to raise his or her own child, in favor of a nonparent, for the insubstantial reasons which are suggested here.

HALL, C.J., concurs in the dissenting opinion of HOWE, J.