**STATE of Utah, in the Interest of T.H., Appellee,**

v.

**R.H. and T.H., Appellants.**

**No. 920244–CA.**

Court of Appeals of Utah.

Sept. 7, 1993.

---

R. and T.H., pro se.

Arnold G. Gardner, Jr. (argued), Little-field & Peterson, Salt Lake City, Law Guardian Ad Litem.

Jan Graham, Atty. Gen., Linda Luinstra (argued), Carol L.C. Verdoia, Asst. Attys. Gen., Human Services Div., Salt Lake City, for appellee.

Before BILLINGS, P.J., and GARFF and GREENWOOD, JJ.

## OPINION

BILLINGS, Presiding Judge:

Petitioners, R. and T.H., appeal from an order denying a petition for restoration of

custody of their daughter, T.H., and granting the State's motion to grant permanent custody of T.H. to her maternal grandparents. We affirm.

## FACTS

Petitioners are married and the parents of one child, T.H., born March 25, 1986. On August 13, 1990, the juvenile court considered the following allegations against petitioners:

Allegation 001—During the summer of 1989, [T.H.] age 3, alleged that [Mr. H.] engaged in [lewd] conduct with his daughter by wrongfully touching her on the vaginal area and breasts and causing her to touch him on the penis; and therefore State intervention is [necessary] to protect the child and provide therapy for all parties.

Allegation 002—The Mother having grounds to believe that the father took indecent liberties with the minor failed to take reasonable measures to protect the child from further abuse and fled with the minor and resided with the father in Colorado.

Petitioners admitted the allegations. Based on these admissions and additional documentary evidence,[1] the court found the allegations "to be true and correct by clear and convincing evidence." Following the hearing, the court held that T.H. was a neglected child and came within the provisions of the Juvenile Court Act. The court ordered petitioners "be temporarily deprived of the custody and guardianship of

---

1. The court received three exhibits at the hearing. The court accepted Exhibits 1 and 2 into evidence for the purpose of adjudication, and Exhibit 3 into evidence for the purpose of disposition.

Exhibit 1 is a child protective services social summary dated January 2, 1990. The summary notes T.H. was able to relate repeatedly to her mother and other individuals sexual acts with her father "including his sucking of her breast area, his sucking of her vagina, her sucking of his penis, his putting of his penis on her vagina and buttocks, his forcing her to touch his penis."

Exhibit 2 is a social summary dated February 7, 1990, which notes T.H. "had repeatedly disclosed to persons including involved therapists that her father had been sexually abusing her."

Exhibit 3 is a report from Dr. Karen Hansen of the Department of Pediatrics dated July 28, 1989. In her report Dr. Hansen stated T.H.'s physical examination was "not entirely normal." She noted "[i]n the fossa navicularius there was a white line just to [T.H.'s] right of midline with disruption of the vascularity," a characteristic "consistent with sexual abuse." She also noted "[T.H.'s] behavioral changes are very concerning, and consistent with sexual abuse, though not diagnostic of it." Dr. Hansen concluded "[t]he information currently available, taken as a whole, leads me to suspect that [T.H.] has been sexually abused."

[T.H.] and custody and guardianship [be] placed with the State Division of Family Services for appropriate out-of-home placement."

The court adopted a treatment plan on February 19, 1991. On June 13, 1991, the court noted petitioners "refused to follow any treatment plan given by Division of Family Services." They also failed to comply with subsequent treatment plans adopted by the court.

On August 22, 1991, Mr. and Mrs. H. filed a petition for restoration of custody and guardianship of T.H. The parents alleged "there has been a substantial change in circumstances requiring modification of this court's prior order in that [T.H.] no longer makes allegations against ... (her father)." They asserted T.H. "has now retracted [her] statement and therefore the underlying need for state intervention to protect the child and provide therapy is no longer present."

On October 2, 1991, alleging the parents had refused to obtain therapy as required by the treatment plans, the State filed a petition seeking termination of petitioners' parental rights. On February 19, 1992, the State moved to strike the petition for termination of parental rights and filed a new motion to grant permanent custody and guardianship of T.H. to her maternal grandparents, with whom she has resided since 1989. In addition, the State filed a motion to dismiss the parents' petition for restoration of custody.

On February 24, 1992, a hearing was held in which the court considered the parents' petition for restoration of custody and the State's three motions. Dr. Robert Jay Thomas, who had performed an evaluation on T.H. at the request of T.H.'s maternal grandmother, testified. The court received as evidence from Dr. Thomas a drawing made by T.H. on October 14, 1991, which the doctor described as having the appearance of an erect penis and is "very consistent with ... sexual abuse." He testified T.H. refused to discuss her father during therapy beyond stating "He hurt me." Dr. Thomas further testified T.H. was strong-willed and outspoken and it was "very un-

likely" the sexual abuse allegations could have been planted in T.H.'s mind.

Olivia Moreton, a licensed clinical social worker who had been seeing T.H. at the request of DFS, testified T.H. is "very attached" to her maternal grandparents, whom she calls her "best family," and has a fear of her father. T.H. voluntarily told Ms. Moreton her father had "hurt" her. Ms. Moreton asked T.H. how the hurt had occurred. T.H. told her that her father had sucked on her breasts. Ms. Moreton also testified she "sincerely doubt[ed]" the sexual abuse allegations could have been planted in T.H.'s mind because T.H. has a "strong sense of right and wrong" and is "strong and outspoken." When asked about the parents' assertion that T.H. has forgotten and recanted her allegations of sexual abuse, Ms. Moreton answered: "No. She has not." Ms. Moreton testified the continuing legal process caused anxiety in T.H.'s life and that it would be in T.H.'s best interest to continue to live with her maternal grandparents. Ms. Moreton said she would have a "grave concern for [T.H.'s] emotional well being" if T.H. were placed back in her parents' custody.

Mrs. S., T.H.'s maternal grandmother, testified she and her husband care for T.H., love her, and desire to have custody and guardianship transferred to them. Mrs. S. testified T.H. had told her that her father had sucked on her breasts and had hurt her in her vaginal area.

Mrs. H. indicated to the court that she continued to live with Mr. H. and intended to maintain her marital relationship with him.

In its combined findings of fact and conclusions of law on all the motions before it, the court found Mr. H.'s psychological evaluation indicated he "is extremely defensive and resistive to psychological evaluation and counseling.... [H]is lack of insight and unwillingness to accept counseling would impede any attempt at therapy." Furthermore, the evaluation indicated Mr. H. "was immature and self-centered and appeared to be insensitive to others and was the kind of person who would experi-

ence little guilt or remorse for inappropriate behavior." The court also found by "clear and convincing evidence, based on the testimonies of Dr. Jay Thomas, Olivia Moreton, and [Mrs. S.] ... [T.H.] was sexually abused by her father, and it would endanger [T.H.] to return her to his custody at this time." Moreover, the court found the system of ongoing reviews and dispositions involving DFS "are emotionally disrupting to [T.H.] who needs and desires a sense of stability [and] permanency in her life." Based upon these findings, the court denied the parents' petition requesting restoration of custody of T.H., granted the State's motion to strike the petition for termination of parental rights, and ordered custody and guardianship of T.H. terminated from DFS and permanent custody and guardianship of T.H. placed with T.H.'s maternal grandparents.

Claiming the trial court abused it discretion in denying their petition for restoration of custody, petitioners appeal. They also claim the court erred in granting the State's petition to transfer custody and guardianship to the maternal grandparents.

## STANDARD OF REVIEW

Juvenile court determinations regarding the custody of children are equitable in nature. *State ex rel. A.H. v. Mr. & Mrs. H.*, 716 P.2d 284, 286 (Utah 1986).

> Ordinarily, we will not overturn the findings and decisions of the juvenile court "unless they are clearly against the weight of the evidence, or it is plainly manifest that the court has abused its discretion." *State ex rel. F.D.P. v. Dade*, 14 Utah 2d 47, 376 P.2d 948, 951 (1962). However, this Court has recognized that in equitable proceedings we must do our own weighing and make our own decision based on the facts in the record.

*Id.* See also *D.P. v. Social Serv. & Child Welfare Dep't*, 19 Utah 2d 311, 431 P.2d 547, 553 (1967). "[D]ue to the trial court's prerogatives and its advantaged position, it is allowed considerable latitude of discretion; and its findings and judgment will not be disturbed unless it clearly appears that

it has abused its discretion, or has acted not in conformity with law." *State ex rel. Tom v. Tom*, 556 P.2d 213, 216 (Utah 1976).

## PETITION FOR RESTORATION OF CUSTODY UNDER § 78–3a–47

### A. Procedural Posture

■ Petitioners first claim the court erred in denying their petition for restoration of custody under Utah Code Ann. § 78–3a–47 (Supp.1993). The State responds that section 78–3a–47 is inapplicable because there was "no final determination and decree with regard to custody."

Section 78–3a–47 provides in part:

> A parent, guardian, or next friend of a child whose legal custody has been transferred by the court to an individual, agency, or institution, except a secure youth corrections facility, may petition the court for restoration of custody or other modification or revocation of the decree, on the ground that a change of circumstances has occurred which requires such modification or revocation in the best interest of the child or the public. The court shall make a preliminary investigation, and may dismiss the petition if it finds that the alleged change of circumstances, if proved, would not affect the decree. If the court finds that a further examination of the facts should be had, or if the court on its own motion determines that the decree should be reviewed, it shall conduct a hearing upon due notice to all persons concerned, and may thereupon enter an order continuing, modifying, or terminating the decree.

*Id.*

■ The State premises its argument that petitioners do not have standing under this statute upon a misreading of two Utah Supreme Court cases. In the more recent case, *State ex rel. A.H. v. Mr. & Mrs. H.*, 716 P.2d 284 (Utah 1986), the supreme court stated section 78–3a–47 " 'does not apply until there has been a *final* determination and decree of custody.' " *Id.* at 286 (quoting *State ex rel. Tom v. Tom*, 556 P.2d 213, 215 (Utah 1976)) (emphasis in

original). The court then held there was not a final custody determination because the juvenile "court had merely placed temporary custody with DFS subject to further court order pending further development of the facts." *Id.* Thus, unlike the case at hand, in *A.H.* there had been no final determination following a hearing by the court regarding the allegations of neglect or abuse in the original petition filed by the State. Once the court has developed the facts and made a final determination that abuse or neglect has occurred and removed custody from the parents, section 78–3a–47 allows the parents to petition for restoration of custody if they allege a change of circumstance, even if the custody removal order is titled "temporary."

The other case cited by the State, *State ex rel. Tom v. Tom,* 556 P.2d 213 (Utah 1976), supports this view. In *Tom,* three children whose parents were deceased were taken from the home of one aunt and uncle (the Toms) by another aunt and uncle (the Bakers). The Bakers filed a petition of custody with the juvenile court in Salt Lake County and received a temporary order of custody. The "temporary" in this case referred to the time prior to the full hearing on the petition. Meanwhile, the court transferred venue to Juab County. The Juab County Attorney filed a supplementary petition. Following a hearing and investigation, the court found the interest and welfare of the children were best served by awarding custody to the Toms.

On appeal, the Bakers asserted the supplementary petition was inappropriately filed because it alleged no change of circumstances as required by the precursor to section 78–3a–47. The court held the statute did "not apply until there has been a final determination and decree of custody." *Id.* at 215. The court correctly held the supplementary petition was filed pursuant

to the change of venue and thus the statute did not apply. *Id.*

Confusion arises because the words temporary and final have varying meanings based on the stage of the adjudicative process in the juvenile court. For example, like it was used in *A.H.,* temporary can refer to an interim custody order pending a final factual determination of the accusations in a petition alleging abuse.[2] Alternatively, temporary, as used in this case, refers to the temporary placement of the child under a final order after a hearing on the merits of a petition alleging abuse. In this setting, the custody is still "temporary" as opposed to "permanent" because the court might later return custody to the parents after further proceedings. Thus, a court may well make a temporary disposition of custody while making a final determination regarding the allegations in the underlying petition.[3]

In this case, the juvenile court held a full hearing and issued a final decree regarding the allegations of abuse in the petition and issued a temporary order regarding placement outside the home. Thus, the order was final for the purposes of section 78–3a–47 and the parents correctly relied on that section to petition for restoration of custody.

## B. Change of Circumstances

■ The only change of circumstances the parents alleged was T.H.'s purported recanting of the abuse. This is not really a change of circumstances but rather an attack on the original judgment of the trial court. However, the record clearly indicates that at the August 13, 1990 hearing petitioners admitted the allegations. Further, the court found the allegations to be true and, if nothing else, res judicata now precludes Mr. and Mrs. H. from denying the allegations. *See State v. V.G.P.,* 845

2. *See* Utah Code Ann. § 78–3a–23 (1992) (empowering court "[a]t any time after a petition is filed [to] make an order providing for temporary custody of the child").

3. The State's reading of *A.H.* would require us to reach one of two unacceptable conclusions. On the one hand we could allow prospective adop-

tive parents access to petition for restoration of custody and deny statutorily preferred parents such access. Or, on the other hand, we could allow parents such access outside the statutory scheme, thereby rendering the statute meaningless.

P.2d 944, 947 (Utah App.1992). Petitioners complain they did not understand the effect of their admissions and they were "angry" at their counsel for not explaining the effect of their admissions. However, they did not take any action to appeal the court's ruling. Furthermore, the exhibits at the hearing constitute sufficient independent evidence to support the court's ruling even absent the admissions.[4] Thus, we find no abuse of discretion in the court's denial of the parents petition for restoration of custody.

## MOTION TO TRANSFER CUSTODY TO GRANDPARENTS UNDER § 78–3a–39(24)

■■■ A juvenile court "may enter an order of permanent custody and guardianship with a relative ... of a minor where the court has previously acquired jurisdiction as a result of an adjudication of abuse, neglect, or dependency." Utah Code Ann. § 78–3a–39(24)(a) (Supp.1993). However,

> [b]efore depriving any parent of custody, the court shall give due consideration to the preferred right of parents to the custody of their children.... The court may not transfer custody to another person ... unless the court finds from all the circumstances in the case that the welfare of the child or the public interest requires that the child be taken from his home.

*Id.* § 78–3a–39(21). Therefore, custody should be granted to a relative only upon a showing of good cause and a finding that the best interests of the child or the public interest will be served by granting custody to an individual other than the natural parents.

The evidence set forth in the record and the trial court's findings based thereon clearly meet the statute's requirement. At the August 13, 1990 hearing, petitioners admitted that Mr. H. "engaged in [lewd] conduct with [T.H.] by wrongfully touching her on the vaginal area and breasts and causing her to touch him on the penis," and Mrs. H., "having grounds to believe that [Mr. H.] took indecent liberties with [T.H.,] failed to take reasonable measures to protect [T.H.] from further abuse." The court also found the State's allegations to be "true and correct." Additionally, the evidence submitted at the February 24, 1992 hearing regarding the custody issue demonstrated T.H. still suffers from ongoing fear and conflict concerning her father. Dr. Thomas testified T.H. refused to discuss her father other than saying he had hurt her. Ms. Moreton testified T.H. fears her father and T.H. told her that her father had sucked on her breasts. Finally, Mrs. S. testified T.H. told her that her father had hurt her in the vaginal area and had sucked on her breasts.

The testimony of Dr. Thomas, Ms. Moreton, and Mrs. S. established a strong bond exists between T.H. and her maternal grandparents; T.H. continues to feel turmoil when confronted with the possibility of returning to her natural parents' home; and T.H. still remembers and asserts her father sexually abused her. Mrs. H. admitted she maintains her marital relationship with Mr. H. and that she intends to continue to do so if T.H.'s custody is returned to her. Neither Mr. nor Mrs. H. has undergone any kind of treatment to deal with T.H.'s neglect; rather, despite their earlier admissions to the State's allegations of neglect in the August 13, 1990 hearing, Mr. and Mrs. H. now deny that any kind of neglect occurred. Thus, we affirm the court's grant of custody to the maternal grandparents as we conclude the requirements of section 78–3a–39(24) were clearly met.

## CONCLUSION

The trial court properly denied the parent's petition for restoration of custody. Furthermore, the evidence in the record demonstrates a showing of good cause and that it is in T.H.'s welfare and in the public interest that T.H.'s maternal grandparents be given permanent custody and guardian-

---

**4.** The judge could have simply dismissed the petition by finding the alleged changed circumstances, even if proved, would not affect the decree. *See* Utah Code Ann. § 78–3a–47 (Supp. 1993).

ship of T.H. We therefore affirm the juvenile court's order granting custody and guardianship of T.H. to her maternal grandparents.

GARFF and GREENWOOD, JJ., concur.