STATE of Utah, in the Interest of H.R.V. and B.P.V., persons under eighteen years of age.

K.V., Petitioner and Appellee,

v.

S.V., Respondent and Appellant.

No. 940526–CA.

Court of Appeals of Utah.

Nov. 22, 1995.

Earl S. Spafford and Clark A. Harms, Salt Lake City, for Appellant.

Ann L. Wassermann, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD and WILKINS, JJ.

WILKINS, Judge:

S.V., the natural father of H.R.V. and B.P.V., appeals the juvenile court's order denying his petition for restoration of custody and awarding permanent custody of the children to their aunt, K.V. We affirm.

## BACKGROUND

H.R.V. was born to H.V., her natural mother, and S.V., her natural father, in July 1986. B.P.V., a son, was born to the same family in November 1987. However, since February 1988, the father's sister, K.V., and his mother have essentially raised and cared for the two children.

In September 1989, a worker from the Division of Family Services took the children into temporary custody and placed them in the Salt Lake County Shelter Program. The children's aunt then filed a petition for custody of the children a few days later, on September 15. After a contested evidentiary hearing, the juvenile court entered its judgment in June 1990.

The court found that the parents had failed to maintain a meaningful relationship with their children for much of the children's lives; that the parents had frequently failed to support the children, either financially or emotionally; that the parents' drug abuse and other unlawful conduct had adversely affected their ability to properly care for the children; that the parents had demonstrated a lack of understanding of their role and function to the children; and that the parents had made their personal needs paramount to the needs of their children. The court further found that the children had spent a substantial portion of their lives in the care of their aunt and grandmother, who, fortunately, could serve as substitute caretakers for the children.

Accordingly, the juvenile court concluded that the children were "neglected," as defined in the Utah Code. See Utah Code Ann. § 78–3a–2(16) (Supp.1995). The court then temporarily deprived the parents of custody and guardianship of the children, but stayed the order on condition of the parents' compliance with several directives.

The juvenile court reviewed the matter in November 1990. By that time, the parents had separated, and the mother had disappeared from the children's lives. After the November hearing, the court found that the father had not complied with the conditions set forth in the previous order and that the children's physical care, emotional nurturing, and security were jeopardized and compromised while they were in their father's care.

In December of that year, the court lifted its stay of the June order and granted temporary custody of the children to their aunt and grandmother. At the same time, the court granted visitation rights to the father.

In May 1993, the father petitioned the juvenile court for the return of his children. By that time, the father had made significant strides in his drug rehabilitation efforts, had remarried, and had a child with his new wife. The children's aunt contested the father's petition and filed a competing petition for permanent custody of the children.

After a trial held in May 1994, the juvenile court entered its factual findings and legal conclusions. On the basis of these findings and conclusions, the court denied the father's petition for restoration of custody and awarded permanent custody of the children to their aunt in July 1994. The father appeals.

## STANDARD OF REVIEW

"Juvenile court determinations regarding the custody of children are equitable in nature." *State ex rel. T.H. v. R.H.*, 860 P.2d 370, 373 (Utah App.1993). In reviewing these " 'equitable proceedings[,] we must do our own weighing and make our own decision based on the facts in the record.' " *Id.* (quoting *State ex rel. A.H. v. Mr. & Mrs. H.*, 716 P.2d 284, 286 (Utah 1986)). Nevertheless, the juvenile court is allowed a considerable latitude of discretion in child custody matters, and its judgment will not be disturbed unless we determine the juvenile court has exceeded the scope of permitted discretion or has acted contrary to law. *Id.*

When the case involves a petition for restoration of custody, section 78–3a–47 of the Utah Code sets the boundaries within which the juvenile court may exercise its considerable discretion. However, the juvenile court's interpretation of that statute, and subsequent determination of what legal standard to apply, are reviewed for correctness, with no deference given to the juvenile court. *See generally State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993).

## ANALYSIS

Once a parent has been deprived of his or her child's custody, section 78–3a–47 applies to any subsequent petition for restoration of custody. Section 78–3a–47 provides in relevant part:

A parent ... whose legal custody has been transferred by the court to an individual, agency, or institution, ... may petition the court for restoration of custody or other modification or revocation of the decree, on the ground that a change of circumstances has occurred which requires such modification or revocation in the best interest of the child or the public.

Utah Code Ann. § 78–3a–47 (1992). This section applies if the final order of the juvenile court provides for either the child's "permanent" or "temporary" placement. *State ex rel. T.H. v. R.H.*, 860 P.2d 370, 373–74 (Utah App.1993).

The father argues that the changed circumstances to be considered are those which brought about the custodial transfer in the first place. In other words, the juvenile court should consider the change in circumstances involving the father's parental fitness. The aunt, on the other hand, relies on Utah case law involving custody disputes between divorced parents. She argues that the court must find a material change of circumstances which relates to the care that the children are receiving in the currently existing custodial relationship.

The juvenile court agreed with the aunt and held that "Utah law is clear that the material change of circumstances must be found in the [aunt's] home, and not in the father's home." The court further held that the father must show that a "material change of circumstances has had or is having a negative influence on the care of the children in their current home."

The juvenile court's interpretation of section 78–3a–47 is incorrect. When faced with a question of statutory interpretation, we first look to the statute's plain language. *Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 610 (Utah App.1995). Whenever possible, we will construe a statute according to its plain language. *Id.*

Section 78–3a–47 plainly and unambiguously states the appropriate grounds for restoring custody to a parent or otherwise modifying the custody order. The juvenile court can take such actions only when "a change of circumstances has occurred which requires

such modification or revocation in the best interest of the child or the public." Utah Code Ann. § 78–3a–47 (1992).

■ Unlike the law governing modification of custody orders between divorced parents, section 78–3a–47 simply requires a change of circumstances, not a "material" change of circumstances. *Compare id.* § 78–3a–47 (1992) *with id.* § 30–3–10.4(1) (1995) (stating that the court may modify a joint custody order if "the circumstances of the child or one or both custodians have materially and substantially changed") *and with Cummings v. Cummings,* 821 P.2d 472, 476 (Utah App. 1991) (holding that an asserted change in circumstances must "have some material relationship to and substantial effect" on the parenting ability of the current custodian).

■ Furthermore, the changed circumstances the juvenile court should consider include any and all factors impacting the child. The court is not restricted to considering only circumstances involving the current custodian or only those relating to the natural parent's fitness to raise a child. This is so because the paramount concern in such cases is the *child's* rights and interests. Section 78–3a–47 clearly mandates that the only circumstances of any relevance are those *requiring* a change in the current custodial relationship *in the best interest of the child or the public.*

Therefore, the juvenile court imposed an improper legal standard in reaching its decision in this case. Even so, the court would have reached the same result under the proper standard. The father has the burden to show not only a change of circumstances, but also that restoring custody to him is in his children's best interests. He has failed to do this.

The juvenile court clearly addressed the best interests of the children in its findings. The court found that the children have been well cared for while in their aunt's custody; that they consider her to be their psychological parent and regard her as their mother; and that the bond between the aunt and the children is stronger than the bond between the father and his children. The court further found that it was only through the stability and care provided by the aunt, together with therapeutic intervention, that the children overcame the "attachment disorder" from which they suffered and developed a sense of security and stability. Finally, the court found that the children continue to articulate a fear of staying overnight with their father; and that if the children were moved, and custody granted to their father, it would destroy their foundation for a healthy life. The court made these findings despite noting the improvements the father had made in his life.

On the basis of these findings, the juvenile court concluded that, in the best interests of the children, the father's petition for restoration of custody should be denied and the aunt's petition for permanent guardianship should be granted. The father does not challenge the juvenile court's factual findings, and we will not disturb them.

Instead, the father argues that before the juvenile court may consider the best interest of the children, the court must consider the presumption in favor of natural parents raising their children. *See Hutchison v. Hutchison,* 649 P.2d 38, 40–41 (Utah 1982) (discussing this parental presumption). The juvenile court made no findings in this case concerning the parental presumption. The father contends that only when the court's findings expressly rebut the three *Hutchison* factors relating to the parental presumption, may the juvenile court then deny custody to the natural parent in the best interest of the children.

■ The parental presumption was judicially created to protect both the rights of natural parents and the best interests of children. *See id.* at 40 ("This presumption recognizes 'the natural right and authority of the parent to the child's custody.'" (quoting *State ex rel. Jennings,* 20 Utah 2d 50, 52, 432 P.2d 879, 880 (1967)); *Kishpaugh v. Kishpaugh,* 745 P.2d 1248, 1250 (Utah 1987) ("The rationale for the presumption is that it will normally serve the best interests of the child . . . .").

It is rooted in the common experience of mankind, which teaches that parent and child normally share a strong attachment

or bond for each other, that a natural parent will normally sacrifice personal interest and welfare for the child's benefit, and that a natural parent is normally more sympathetic and understanding and better able to win the confidence and love of the child than anyone else.

*Hutchison*, 649 P.2d at 40. Accordingly, every natural parent has a right to rely on the parental presumption to prevent the transfer of his or her child's custody to a nonparent, unless the presumption has been rebutted or otherwise lost. *See* Utah Code Ann. § 78–3a–39(2)(v) (Supp.1995) ("Before depriving any parent of custody, the court shall give due consideration to the rights of parents concerning their children.").

█ In some cases, the trial court must specifically consider the three *Hutchison* factors, and determine whether the evidence proves a lack of those factors, before dismissing the parental presumption. "[T]he parental presumption can be rebutted only by evidence establishing that a particular parent at a particular time generally lacks all three of the characteristics that give rise to the presumption...." *Hutchison*, 649 P.2d at 41. However, the *Hutchison* case does not require an inflexible, formulaic approach; the evidence presented need only prove a "general" lack, rather than a complete lack, of the parental characteristics. *Kishpaugh*, 745 P.2d at 1252.

█ On the other hand, a natural parent may lose the right to assert the parental presumption. For example, "[t]he presumption does not apply to a parent who would be subject to the termination of all parental rights due to unfitness, abandonment, or substantial neglect, since such a parent is *a fortiori* not entitled to custody." *Hutchison*, 649 P.2d at 41.

█ In addition, once the parental presumption has been rebutted or lost, and the natural parent has been deprived of custody, that parent is not entitled to reassert the parental presumption at a later date unless custody has since been restored to the parent. The presumption normally works "in favor of a natural parent who *has* the care, custody, and control of his or her child."

*Kishpaugh*, 745 P.2d at 1250 (emphasis added). Indeed, all the Utah cases previously requiring a trial court to consider the parental presumption have involved situations where a natural parent is, for the first time, in danger of losing legal custody to a nonparent. *See, e.g., Cooper v. DeLand*, 652 P.2d 907 (Utah 1982); *Hutchison*, 649 P.2d 38; *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946).

Furthermore, sound policy dictates that the parental presumption should not apply once the natural parent has lost custody of his or her child. The presumption recognizes the benefits of having loving and able parents raise their children despite the willingness of nonparents who may possess superior caretaking skills. However, the parental presumption is based on the characteristics pertaining to a *healthy* parent-child relationship. When custody has been transferred from a natural parent to a nonparent, it is because the parent has been shown to lack those parental characteristics which give rise to the presumption. To allow the parent to later rely on the presumption in petitioning for restoration of custody would allow the parent to rely on a nonexistent relationship and to benefit from a biological designation lacking any real meaning.

Most importantly, children have a right to be loved, protected, and cared for, and society has an interest in seeing that they are. Allowing a natural parent to reassert the parental presumption after the parent's own conduct has destroyed that presumption would do nothing to further the children's rights or society's goals. Neither would such a practice serve the children's long-recognized need for stability in relationships. *See Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989) ("[T]he emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability in its relationships to important people and to its environment.").

We therefore reiterate that the paramount concern in this case is the best interests of the children. The children's interests in this case would be undermined if their father could rely on a parental presumption. He cannot. The legislature has made clear that

only those circumstances affecting the best interests of the children or the public can be considered. *See* Utah Code Ann. § 78–3a–47 (1992). The juvenile court concluded that the children's best interests would be served by denying the father's petition and granting permanent custody to the aunt. We agree.

## CONCLUSION

The juvenile court incorrectly concluded that section 78–3a–47 required a material change of circumstances in the currently existing custodial relationship. *Any* change of circumstances affecting the interests of the children was sufficient for purposes of the statute.

Nevertheless, the father also had the burden to show that, in light of the changed circumstances, the best interests of his children or the public require a change in the custody arrangement. He has failed to meet this burden. The juvenile court adequately addressed the children's best interests. The court determined that, in light of those interests, the father's petition for restoration of custody should be denied and the aunt's petition for permanent custody granted.

The court did not exceed the scope of its discretion in reaching this all-important conclusion. The father had no right to assert the parental presumption in this case. Thus, despite the juvenile court's incorrect interpretation of section 78–3a–47, we affirm its decision on the proper grounds of the children's best interests. *See Maertz v. Maertz,* 827 P.2d 259, 262 (Utah App.1992) ("We may affirm the trial court on any proper ground.").

BENCH and GREENWOOD, JJ., concur.