12 P.3d 80 (2000)
2000 UT 79
STATE of Utah, in the Interest of M.W. and S.W., persons under eighteen years of age.
State of Utah, Petitioner and Cross-Respondent, and
L.A.W., Respondent and Cross-Petitioner.
Nos. 990137, 990140.
Supreme Court of Utah.
September 29, 2000.
*81 Jan Graham, Att'y Gen., Carol L.C. Verdoia, Asst. Att'y Gen., Salt Lake City, for petitioner.
Thomas P. Isom, Midvale, James C. Haskins, Salt Lake City, for respondent.
Paul S. Felt, Salt Lake City, for the grandmother Martha M. Pierce, Salt Lake City, guardian ad litem.
On Certiorari to the Utah Court of Appeals
HOWE, Chief Justice:

INTRODUCTION
¶ 1 We granted cross petitions for writs of certiorari to the Utah Court of Appeals. Petitioner and cross-respondent, the State of Utah, seeks review of the court of appeals' decision that the natural parent of two girls was entitled to the parental presumption in a custody dispute between the parent and a non-parent even though the juvenile court had previously determined that the children had been neglected by that parent. See State ex rel. M.W. & S.W., 970 P.2d 284 (Utah Ct.App.1998). L.A.W., the natural father of the children, cross-petitioned.

BACKGROUND
¶ 2 L.A.W.[1] and W.M. (the Mother) are the natural parents of two minor daughters, M.W. and S.W. L.A.W. and the Mother were granted a divorce in April 1993 by the district court and stipulated to joint custody of their two daughters. The following month, the Mother left the state to work, leaving the children with L.A.W., who sent them to live with their maternal grandmother (the Grandmother) in Arkansas. A pediatrician in Arkansas found evidence that S.W. had been sexually abused, after which an Arkansas court ordered that the children be returned to Utah where they were taken into protective care by the Division of Family Services (DFS).[2] DFS subsequently placed them in the foster care of the Grandmother pending a review hearing.
¶ 3 After the evidence of sexual abuse of S.W. was substantiated by a physician in Utah, a shelter hearing was held. Upon conclusion of that hearing, temporary care of the children continued with the Grandmother who moved from Arkansas to Utah to care for them pending resolution of the proceedings in the Utah courts.
*82 ¶ 4 On November 5, 1993, the State filed a petition requesting the juvenile court to adjudicate M.W. and S.W. neglected (neglect petition). The neglect petition was heard on February 9, 1994, when L.A.W. and the mother stipulated to a set of facts upon which the judge based his adjudication of neglect. The dispositional hearing was held March 8, 1994, and resulted in a continuation of the previous custody order and adoption of a treatment plan. No appeal was taken from that judgment.
¶ 5 Meanwhile, L.A.W., the Mother, and the Grandmother filed separate petitions in the district court to modify the decree of divorce (custody petitions), each seeking sole custody of the children. The custody petitions were consolidated and certified to the juvenile court where they were heard at trial in November 1994 and January 1995.[3] The juvenile court held that the Grandmother had rebutted the parental presumption and that placing the children with her was in the children's best interests. The court terminated the custody of DFS and granted the Grandmother permanent care and custody of both minor girls.
¶ 6 L.A.W. appealed to the court of appeals, which affirmed the juvenile court's determination that the parental presumption had been rebutted; but the court of appeals remanded the case to the juvenile court to hold an additional evidentiary hearing on the best interests of the children inasmuch as L.A.W. had been deprived of her right to present such evidence at the custody trial. See M.W., 970 P.2d at 295.
¶ 7 The State, though satisfied with the result of the court of appeals' decision, now seeks review of its legal conclusion that L.A.W., as a parent who had previously been deprived of custody of her children as a result of a neglect adjudication, was entitled to the parental presumption in a custody dispute with the Grandmother, a non-parent. L.A.W. cross-petitions, contending first that this court does not have jurisdiction to hear the State's petition; second, that the State does not have standing to petition this court for review; third, that while the court of appeals properly held that L.A.W. was entitled to the parental presumption, it erred in holding that the parental presumption had been rebutted; and fourth, that the court of appeals improperly dismissed certain of her claims.[4]

STANDARD OF REVIEW
¶ 8 "It is a fundamental tenet of certiorari review that `we review the decision of the court of appeals, not that of the trial court.'" Reese v. Reese, 1999 UT 75, ¶7, 984 P.2d 987 (quoting Willey v. Willey, 951 P.2d 226, 230 (Utah 1997)). "We review the court of appeals' conclusions of law for correctness and grant them no deference." Id. at ¶ 10.

ANALYSIS

I. JURISDICTION
¶ 9 L.A.W. first contends that this court lacks jurisdiction to review the parental presumption issue the State raised in its petition for certiorari. She argues that because the State did not file a notice of appeal from the juvenile court to the court of appeals pursuant to rules 3(a) and 4(a) of the Utah Rules of Appellate Procedure, it is barred from raising its own issues on certiorari review, and indeed "is only a party to the appeal to defend against L.A.W.'s issues relating to state action."
¶ 10 There is no merit in this contention. The State was a party to the appeal heard in the court of appeals. L.A.W. does not contend that the court of appeals lacked jurisdiction over the State, nor that she objected to the State's appearance in that court. Under rule 47(b) of the Utah Rules of Appellate *83 Procedure, "[all parties to the proceedings in the court of appeals shall be deemed parties in the Supreme Court" subject to an exception not pertinent here. Clearly, we have jurisdiction over the State.

II. STANDING
¶ 11 L.A.W. next contends that "the State lacks standing to appeal the juvenile court's decision because the State was not a party to the trial from which L.A.W. takes her appeal, and therefore has no standing to appeal the order." However, the State is not seeking review of the decision of the juvenile court, but instead seeks review of a decision of the court of appeals.
¶ 12 There is also, however, some language in L.A.W.'s brief that could be construed as an objection to the State's standing to petition for review of the court of appeals' decision. We reject that objection as well. A party has standing if any one of three criteria is met: (1) the interests of the parties are adverse, and the party seeking relief has a legally protectible interest in the controversy; (2) no one has a greater interest than that party and the issue is unlikely to be raised at all if standing is denied; or (3) the issues raised by the party are of great public importance and ought to be judicially resolved. See Kennecott Corp. v. Salt Lake County, 702 P.2d 451, 454 (Utah 1985) (citing Jenkins v. Swan, 675 P.2d 1145, 1150-51 (Utah 1983)); see also V-1 Oil Co. v. Utah State Tax Comm'n, 942 P.2d 906, 910-11 (Utah 1996) (stating that "a party seeking standing must demonstrate only one of the [Swan requirements]"). We conclude that the issue upon which the State seeks review, whether a natural parent who has lost custody of his or her child pursuant to an adjudication of neglect is entitled to the parental presumption in a subsequent custody dispute with a non-parent, is of great public importance and should be judicially resolved.

III. PARENTAL PRESUMPTION
¶ 13 The State seeks reversal of the court of appeals' determination that L.A.W., even though she had previously lost custody of the children following a neglect adjudication by the juvenile court, was entitled, as the natural father of M.W. and S.W., to the parental presumption in the custody dispute with the Grandmother.

A. Background of the Parental Presumption
¶ 14 The court of appeals correctly stated in its decision that "the Utah Constitution and the United States Constitution `recognize[] and protect[] the inherent and retained right of a parent to maintain parental ties to his or her child.'" M.W., 970 P.2d at 287 (quoting In re J.P., 648 P.2d 1364, 1377 (Utah 1982)). The court was also correct in stating that when a natural parent and a nonparent compete for custody of a child, the natural parent's inherent right to maintain those ties to the child is protected by a judicially created "parental presumption," which must be rebutted by the non-parent before a court can determine which custody arrangement will be in the best interests of the child. See id. at 287-88; see also Kishpaugh v. Kishpaugh, 745 P.2d 1248, 1250 (Utah 1987) (referencing Utah cases that recognize a parental presumption).
¶ 15 We determined in Hutchison v. Hutchison, 649 P.2d 38 (Utah 1982), that to rebut the parental presumption, a non-parent must prove that (1) the strong mutual bond parent and child normally share does not exist, (2) the parent will not sacrifice his or her personal interests or welfare for the child, and (3) the parent does not have the sympathy for and understanding of the child that a parent characteristically would. See id. at 41. If a non-parent can rebut the presumption, the parent and the non-parent will then stand on equal ground in the custody dispute, which will be decided based on the best interests of the child. See id.

B. Losing Entitlement to the Parental Presumption
¶ 16 As the court of appeals noted, entitlement to the parental presumption can be lost in certain cases, including when a parent has had his or her parental rights terminated or has previously lost custody of his or her child. See M.W., 970 P.2d at 288 (citing State ex rel. H.R.V. & B.P.V., 906 P.2d 913, *84 917 (Utah Ct.App.1995) ("[S]ound policy dictates that the parental presumption should not apply once the natural parent has lost custody of his or her child.")); see also Kishpaugh, 745 P.2d at 1250 (stating that the presumption works "in favor of a natural parent who has the care, custody, and control of his or her child"); Hutchison, 649 P.2d at 41 ("The presumption does not apply to a parent who would be subject to the termination of all parental rights due to unfitness, abandonment, or substantial neglect, since such a parent is a fortiori not entitled to custody.").
¶ 17 The court of appeals explained further in M.W. that a previous loss of custody, whether temporary or permanent, can be the basis for taking away the presumption only when the loss of custody is the result of a "`final factual determination' on the merits of the petition at issue." M.W., 970 P.2d at 289 (quoting State ex rel. T.H. v. R.H, 860 P.2d 370, 374 (Utah Ct.App.1993)) (construing H.R.V., 906 P.2d at 917). The court reasoned that without a final factual determination, a parent could lose the presumption "without a court ever ruling on whether the parent's parenting skills are deficient." Id.
¶ 18 We agree with the court of appeals' conclusion that in order for a previous loss of custody to deprive a parent of his or her entitlement to the parental presumption in a subsequent custody dispute, that loss of custody, whether temporary or permanent, must be the result of a final factual determination on the merits of an underlying petition.[5] As the court of appeals reasoned, any other result would impermissibly diminish the protections placed on a parent's constitutional right to custody of his or her own child. See M.W., 970 P.2d at 289. Thus the question we must address is whether the court of appeals erred in its determination that L.A.W.'s loss of custody was not the result of a final factual determination. To resolve this issue, we must determine which of the various juvenile court orders was the basis for the previous loss of custody and whether that order was a final factual determination on the merits of an underlying petition.

1. Petition Underlying the Order Depriving L.A.W. of Custody
¶ 19 An order of custody was signed by juvenile court Judge Andrew A. Valdez upon conclusion of a February 9, 1994, hearing in which the neglect petition was adjudicated. In that order, Judge Valdez stated that "[t]he previous order of custody and guardianship with the Division of Family Service is continued." A dispositional hearing was then held March 8, 1994, after which Judge Valdez signed an order stating: "1. The previous order of temporary custody and guardianship of [M.W. and S.W.] with the Division of Family Service is continued. 2. The maternal grandmother ... will continue to provide for the needs of the children. 3. The amended Treatment Plan ... is incorporated by reference in this Order."
¶ 20 Because there were two sets of petitions pending regarding the placement of the childrenthe neglect petition and the custody petitionswe must determine which of the two sets resulted in the custody order depriving L.A.W. of custody.[6] The court of appeals found that the orders depriving L.A.W. of custody were "orders pending the outcome of the various custody petitions before *85 the court." M.W., 970 P.2d at 289. In other words, the petitions underlying the custody order depriving L.A.W. of custody were the custody petitions, which were still pending, not the neglect petition. If it were true that the February 9 and March 8 custody orders were made pursuant to the custody petitions, then the court of appeals would be correct in concluding that they were not final orders because the custody petitions were not finally adjudicated until the trial later held in November. However, we find that this conclusion is error; the petition underlying the order depriving L.A.W. of custody was the neglect petition filed by the State.
¶ 21 The February 9 hearing was clearly an adjudication of the neglect petition; it had nothing to do with the various custody petitions. This conclusion follows from several facts in the record. Previous hearings and notices indicated that the subject of the hearing would be the State's neglect petition.[7] The transcript of the hearing clearly shows that the purpose of the hearing was to discuss and submit a settlement agreement reached by the parties on the neglect petition. Judge Valdez was not even aware at the February 9 hearing that the custody modification petitions had been certified to the juvenile court. Counsel for L.A.W. stated at the February 9 hearing that "this is not a custody matter," and for that reason objected to the presence of the Grandmother in the courtroom because she was a party only to the custody modification matter. The objection was sustained.
¶ 22 In light of these facts, we hold that the orders made upon conclusion of the February 9 and March 8 hearings were based on the neglect petition and not on the custody petitions.[8]

2. Finality of the Neglect Order
¶ 23 Having determined that the loss of custody was based on the State's petition to adjudicate the children neglected, we must determine whether that neglect adjudication was final. If that order was the result of a final adjudication of the neglect petition, it served to deprive L.A.W. of her entitlement to the parental presumption in the subsequent custody dispute with the Grandmother.
¶ 24 The court of appeals found that the order was not final in part because it "contemplated further action in the case." M.W., 970 P.2d at 290. We assume from the court of appeals' finding the custody petitions were the basis of the custody order, that by "further action" the court of appeals meant that the juvenile court would later make a final determination when it heard the custody petitions. However, as we stated above, the custody order was not based on the custody petitions, and the subsequent resolution of a custody petition would not affect the finality of the neglect adjudication; the petitions are separate and distinct. Therefore we must review the finality of the neglect adjudication.
¶ 25 The finality of an order in juvenile proceedings is determined the same way as the finality of an order in other courts. See State ex rel. T.D.C., 748 P.2d 201, 202 (Utah Ct.App.1988). "A final, appealable order is one that ends the current juvenile proceedings, leaving no question open for further judicial action." Id.
¶ 26 Following a neglect adjudication, the juvenile court continues to have jurisdiction over and periodically reviews the case, but that does not mean the neglect adjudication is not final. In fact, the court of appeals has stated, "[a]lthough the juvenile court retains jurisdiction of a child whose custody was adjudicated in a neglect proceeding, ... the findings and order entered pursuant to the neglect petition are final and appealable." *86 State ex rel. J.J.T. & T.J.T., 877 P.2d 161, 164 n.3 (Utah Ct.App.1994) (citations omitted).[9] Because an order entered upon disposition of an adjudicated petition of abuse, neglect or dependency is a final order on the merits of the petition, see State ex rel. E.M., A.M., & F.M., 922 P.2d 1282, 1284 (Utah Ct.App.1996), it "ends the current juvenile proceedings" begun by the petition, T.D.C., 748 P.2d at 202, and is a "final factual determination" of the underlying petition, M.W., 970 P.2d at 289.[10]
¶ 27 The juvenile court adjudicated L.A.W.'s children neglected based on stipulations to several of the allegations in the State's petition at the February 9, 1994, hearing. The court ordered that custody of the children remain with DFS at that hearing and again at the dispositional hearing a month later. The court of appeals implied that because the neglect petition in the case at bar was adjudicated based on admissions of the parents, it was not "`a final factual determination' on the merits of the petition at issue," M.W., 970 P.2d at 289 (citations omitted), and thus was not sufficient to protect the interests of the natural parent, see id. We disagree. Factual determinations can be based either on evidence or on stipulation of the parties. See United Factors v. T.C. Assocs., Inc., 21 Utah 2d 351, 354, 445 P.2d 766, 768 (1968) ("[W]here parties litigant, instead of assembling witnesses and putting on their proofs, reduce their respective rights and priorities to writing and stipulate that a decree may be entered in conformity thereto ... [such writing] has all the binding effect of findings of fact and conclusions of law made by the court upon the evidence."); Deseret Sav. Bank v. Walker, 78 Utah 241, 252, 2 P.2d 609, 614 (1931) ("`A valid stipulation concerning any matter properly before the court ... is conclusive of all matters necessarily included in the stipulation.'" (citation omitted)). By admitting to certain allegations in the State's petition of neglect, L.A.W. allowed the court to make a legal determination that her children were neglected. We therefore hold that the February 9 and March 8, 1993, custody orders depriving L.A.W. of custody of M.W. and S.W. were the result of the neglect adjudication and that the neglect adjudication and subsequent dispositional hearing constituted a final factual determination of the State's neglect petition. Therefore, L.A.W.'s parental presumption was lost.
¶ 28 Because we hold that L.A.W. was not entitled to the parental presumption in the custody dispute with the Grandmother, we need not determine whether the court of appeals erred in concluding that the Grandmother had rebutted the parental presumption. Nor need we reach L.A.W.'s contention that the court erred in its findings of fact leading to that conclusion.

IV. COURT OF APPEALS' ERROR IN DISMISSING CERTAIN CLAIMS
¶ 29 L.A.W. contends that the court of appeals erred in dismissing two of her claims: the State's failure to make reunification a permanency goal, and DFS's failure to make reasonable efforts toward reunification. However, L.A.W. has failed to identify, and we have not been able to find, any evidence in the record that those issues were preserved for appeal. "This Court will not consider on appeal issues which were not submitted to the trial court and concerning which the trial court did not have the opportunity to make any findings of fact or law." Turtle Mgmt., Inc. v. Haggis Mgmt., Inc., 645 P.2d 667, 672 (Utah 1982); see also Shayne v. Stanley & Sons, Inc., 605 P.2d *87 775, 776 (Utah 1980); Lamkin v. Lynch, 600 P.2d 530, 533 (Utah 1979). Therefore, we affirm the court of appeals' dismissal of these claims.

CONCLUSION
¶ 30 In conclusion, we hold that the State has standing to petition this court to review the decision of the court of appeals, and that this court has jurisdiction over the State. We grant the State the relief sought in its petition, reversing the court of appeals' decision insofar as it found that L.A.W., having been adjudicated a neglectful parent, was entitled to the parental presumption in a subsequent custody dispute with the Grandmother. Because we reach this conclusion, it is unnecessary for us to reach L.A.W.'s contentions of factual error. Finally, we affirm the court of appeals' dismissal of L.A.W.'s claims regarding reunification services because L.A.W. failed to preserve those issues for appeal.
¶ 31 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE's opinion.
NOTES
[1] The natural father of the children, L.A.W., was born a hermaphrodite and underwent gender-corrective surgery in August 1993 to become more definitively female. Though she is the natural father of the children, she is now female and all references to her will be in the female gender.
[2] DFS was later renamed the Division of Child and Family Services.
[3] The record is unclear whether this custody trial was meant to be a twelve-month dispositional review hearing on the State's case as well. The juvenile court record contains an order stating that the trial on the consolidated petitions would be considered a twelve-month dispositional review. However, the transcript from the trial is unclear on the matter.
[4] L.A.W. asks us to address several other issues, but because our forthcoming analysis on the above-mentioned issues is determinative, the others become moot.
[5] The court of appeals has explained the difference between permanent and final orders and the different custody orders resulting from them in the juvenile court context:

[T]emporary and final have varying meanings... in the juvenile court .... [T]emporary can refer to an interim custody order pending a final factual determination of the accusations in a petition ... [or it can refer] to the temporary placement of the child under a final order after a hearing on the merits of a petition.... In this setting, the custody is still "temporary" as opposed to "permanent" because the court might later return custody to the parents after further proceedings. Thus, a court may well make a temporary disposition of custody while making a final determination regarding the allegations in the underlying petition.
T.H., 860 P.2d at 374 (footnote omitted). Thus the fact that the adjudication resulted in a temporary order does not mean the adjudication was not final.
[6] The various petitions, though consolidated into the same juvenile file, were separate matters resolved in separate proceedings. The custody petitions had no impact on the adjudication of the neglect petition.
[7] The hearing was originally calendered as a trial on the neglect petition, but was changed to a pretrial hearing because the parties had come to a settlement agreement on the neglect petition.
[8] The court of appeals made much of the fact that the custody order resulting from the neglect adjudication was "merely" a continuation of the pre-adjudication custody orders, which were not based on any final factual determinations. See M.W., 970 P.2d at 289-90. We see no significance in this fact. The neglect adjudication is still the basis for that custody order. Indeed, Utah Code Ann. § 78-3a-311(2)(a) (Supp.1994) anticipates that a custody order from disposition of a neglect adjudication may result in "continued removal."
[9] A neglect petition, though finally adjudicated, does not terminate the juvenile court's jurisdiction over a child. In fact, the court is under a statutory mandate to retain jurisdiction over a child who is the subject of a neglect, abuse, or dependency petition to conduct a dispositional review hearing no later than twelve months after removal of the child. After the dispositional review hearing, the court must continue to review the case every six months. See Utah Code Ann. §§ 78-3a-312 to -313.
[10] The court of appeals acknowledged E.M. in M.W., but dismissed it without analysis, stating: "It may well be that `final' has different meanings in the context of the right to appeal versus abrogation of the parental presumption." M.W., 970 P.2d at 290 n. 5. We find the court of appeals' holding in E.M. to be on point and cannot accept the court's attempt to distinguish it in M.W.