45 P.3d 527 (2002)
2002 UT App 82
STATE of Utah, in the interest of B.B., a person under eighteen years of age.
K.S. and K.S., Appellants,
v.
S.H. and G.H., Appellees.
No. 20000949-CA.
Court of Appeals of Utah.
March 21, 2002.
*528 Brook J. Sessions, Harris & Carter, Provo, for Appellants.
Leslie W. Slaugh, Howard Lewis & Petersen, Provo, for Appellees.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before BILLINGS, Associate P.J., and GREENWOOD, and ORME, JJ.

OPINION
GREENWOOD, Judge:
¶ 1 K.S and K.S. (the Parents) are the adoptive parents of B.B. They appeal a juvenile *529 court order asserting jurisdiction to enforce a pre-adoption visitation order issued in favor of S.H. and G.H., B.B.'s biological maternal grandparents (the Grandparents), after the Parents adopted B.B. The Parents also appeal the juvenile court's order awarding attorney fees to the Grandparents. Because we conclude the juvenile court lacked jurisdiction, we reverse both orders.

BACKGROUND
¶ 2 The parental rights of B.B.'s biological mother and father were terminated after the juvenile court determined B.B. was a neglected child. The Parents[1] and the Grandparents filed competing petitions for custody and guardianship of B.B. To resolve the dispute, the Grandparents agreed to withdraw their petition and allow the Parents to obtain custody in exchange for visitation rights. The Grandparents also agreed to support the Parents' adoption of B.B. The juvenile court then entered an order establishing a visitation schedule (the Pre-adoption Visitation Order) stipulated to by the parties. Seventeen days later, the juvenile court granted the Parents' adoption petition. The adoption decree did not mention the Pre-adoption Visitation Order or visitation in any form for the Grandparents.
¶ 3 After the Parents adopted B.B., they initially allowed the Grandparents to exercise visitation as specified in the Pre-adoption Visitation Order. Out of concern for B.B., however, the Parents terminated B.B.'s visits with the Grandparents. The Grandparents then filed an Order to Show Cause requiring the Parents to appear in juvenile court to show cause why they should not be held in contempt for not abiding by the Pre-adoption Visitation Order. The Parents filed a Motion to Quash the Order to Show Cause, claiming the juvenile court's jurisdiction ended when it granted the Parents' petition for adoption. The juvenile court denied the Motion to Quash and entered two separate orders: (1) Findings of Fact, Conclusions of Law & Order (the Visitation Order); and (2) Order of Attorney Fees and Judgment (the Attorney Fee Order). The Visitation Order asserted jurisdiction and granted the Grandparents visitation rights pursuant to the stipulated Pre-adoption Visitation Order. The Attorney Fee Order required the Parents to pay the Grandparents' attorney fees incurred for the Order to Show Cause. This appeal followed.

ISSUES AND STANDARDS OF REVIEW
¶ 4 The Grandparents argue that the Visitation Order is not final; thus denying this court jurisdiction. We determine whether an order is final as a matter of law. See In re M.W., 2000 UT 79, ¶¶ 23-26, 12 P.3d 80. The Grandparents also contend that the Parents' appeal of the Attorney Fee Order was not adequately raised in the Parents' Notice of Appeal. We determine whether the Notice of Appeal is adequate to grant this court jurisdiction as a matter of law. See Jensen v. Intermountain Power Agency, 1999 UT 10, ¶ 7, 977 P.2d 474.
¶ 5 The Parents and the guardian ad litem argue the juvenile court lacked subject matter jurisdiction to enter the Visitation Order subsequent to the adoption decree. Whether a court has subject matter jurisdiction is a question of law that we review for correctness. See Burns Chiropractic Clinic v. Allstate Ins. Co., 851 P.2d 1209, 1211 (Utah Ct.App.1993). The Parents also argue that because the juvenile court lacked subject matter jurisdiction, it should not have awarded attorney fees. In this context, we review the award of attorney fees for correctness. See Campbell v. State Farm Mut. Auto. Ins. Co., 2001 UT 89, ¶ 13, 432 Utah Adv. Rep. 44.

ANALYSIS

I. Finality of the Visitation Order
¶ 6 The Grandparents argue this court lacks jurisdiction because the Visitation Order was not a final order. The Visitation Order stated, among other things, that the juvenile court had subject matter jurisdiction to enforce the Pre-adoption Visitation Order, and the Grandparents were entitled to visitation rights as set forth in the Pre-adoption *530 Visitation Order. Subsequent to the Visitation Order, the juvenile court reviewed the Pre-adoption Visitation Order and modified it. Because of these subsequent modifications, the Grandparents argue that the Visitation Order was not a final order. We disagree.
¶ 7 The Court of Appeals has original jurisdiction over appeals from juvenile court. See Utah Code Ann. § 78-3a-909(1) (1996). Rule 3 of the Utah Rules of Appellate Procedure states: "An appeal may be taken from a ... juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments...." Utah R.App. P. 3(a) (emphasis added). Generally, "a judgment is final when it ends the controversy between the parties litigant." Bradbury v. Valencia, 2000 UT 50, ¶ 9, 5 P.3d 649 (citation and quotations omitted). In In re M.W., 2000 UT 79, ¶ 26, 12 P.3d 80, the supreme court held that an order entered after an adjudication hearing on a petition of abuse was final for purposes of appeal. The finality was not affected by the juvenile court's retention of jurisdiction over the juvenile for further proceedings. In so holding, the Utah Supreme Court stated:
The finality of an order in juvenile proceedings is determined the same way as the finality of an order in other courts ... "A final, appealable order is one that ends the current juvenile proceedings, leaving no question open for further judicial action."
....
[T]he juvenile court continues to have jurisdiction over and periodically reviews the case, but that does not mean the ... adjudication is not final.
Id. at ¶¶ 25-26 (citations omitted). Accordingly, even though a juvenile court periodically reviews its orders, the orders may still be final for purposes of appellate review.
¶ 8 The Visitation Order expressly held that the juvenile court had subject matter jurisdiction over B.B., and that the Grandparents were entitled to visitation rights under the Pre-adoption Visitation Order. The hearing subsequent to the issuance of the Visitation Order was merely a review of that order. The Visitation Order resolved the controversy between the parties as raised in the Order to Show Cause concerning the juvenile court's jurisdiction to enforce the Pre-adoption Visitation Order. Because the Visitation Order was final, we have jurisdiction to hear this appeal.[2]

II. Adequacy of the Notice of Appeal
¶ 9 While conceding that the Attorney Fee Order was final for purposes of appeal, the Grandparents argue that because the Parents failed to mention the Attorney Fee Order in their Notice of Appeal, it is not properly before this court. For an appeal to be properly raised, "[t]he notice of appeal... shall designate the judgment or order, or part thereof, appealed from...." Utah R.App. P. 3(d). The Utah Supreme Court has held that this requirement is jurisdictional because "`the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case.'" Jensen v. Intermountain Power Agency, 1999 UT 10, ¶ 7, 977 P.2d 474 (quoting Nunley v. Stan Katz Real Estate, 15 Utah 2d 126, 388 P.2d 798, 800 (1964)). However, "[n]otices of appeal are to be liberally construed." Roberson v. Draney, 54 Utah 525, 182 P. 212, 213 (1919) (citations and quotations omitted); see also U.P.C., Inc. v. R.O.A. Gen., Inc., 1999 UT App 303, ¶ 28, 990 P.2d 945.
¶ 10 The Parents' Notice of Appeal states that they appeal "the ruling of the court on the Motion to Quash and Objection to Setting Hearings without re-opening the file." While the notice provided by this statement is not ideal, it sufficiently notifies the Grandparents that the orders resulting from the September 6, 2000 hearing are being appealed, particularly where the orders bear the same date.[3] *531 Therefore, the Notice of Appeal is sufficient for this court to assume jurisdiction over the issue of attorney fees.

III. Jurisdiction of the Juvenile Court
¶ 11 The Parents and the guardian ad litem argue the juvenile court lacked subject matter jurisdiction to enter the Visitation Order subsequent to the adoption decree. Under Utah law, the juvenile court can maintain continuing jurisdiction over B.B. until she is 21 years old, unless the court terminates jurisdiction prior to that time. See Utah Code Ann. § 78-3a-121(1) (Supp. 2001). "The continuing jurisdiction of the court terminates ... upon order of the court." Id. § 78-3a-121(2)(a)(i). Hence, the dispositive issue is whether a decree of adoption is an "order of the court" that terminates the juvenile court's jurisdiction. To resolve this issue, we turn first to the plain language of Utah's juvenile court statutes and adoption statutes. See State v. Fixel, 945 P.2d 149, 151 n. 2 (Utah Ct.App.1997) ("[T]he primary consideration in statutory construction is `to give effect to the legislature's intent. To discover that intent, this court looks first to the plain language of the statute.'" (Citation omitted.)); see also Lyon v. Burton, 2000 UT 19, ¶ 17, 5 P.3d 616 ("The plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and `with other statutes under the same and related chapters.'" (Citation omitted.)).
¶ 12 Utah's juvenile courts are creatures of statute, and thus are courts of limited jurisdiction. See In re adoption of Trimble, 16 Utah 2d 188, 398 P.2d 25, 26 (1965); In re S.L., 1999 UT App 390, ¶ 52, 995 P.2d 17 (Wilkins, P.J., concurring). Because they are courts of limited jurisdiction, juvenile courts are allowed to do only what the legislature has expressly authorized. See In re S.L., 1999 UT App 390 at ¶ 52, 995 P.2d 17 (stating juvenile court "powers are necessarily limited"). Utah Code Ann. § 78-3a-104 describes the bases for the juvenile court's original jurisdiction. In this case, the juvenile court acquired jurisdiction over B.B. because she was allegedly abused and neglected. See id. § 78-3a-104(1)(c). The juvenile court ultimately granted the guardian ad litem's petition to terminate the parental rights of B.B.'s biological parents. See id. § 78-3a-411. At that point, B.B. had no legal parents and the juvenile court had jurisdiction until a permanent custody order or adoption was achieved. See id. § 78-3a-104(1)(c). Once the juvenile court granted the Parents' petition for adoption, the original basis for jurisdiction over B.B. ceased to exist because B.B. was no longer an abused or neglected child and permanency had been achieved. See generally Utah Code Ann. §§ 78-3a-312 to -313 (Supp.2001).
¶ 13 Based on the above statutory provisions, this court has held that visitation rights of both biological parents and grandparents end upon termination of parental rights. See In re A.B., 1999 UT App 315, ¶ 21, 991 P.2d 70 ("Grandmother's visitation rights were extinguished by operation of law when the court terminated her child's parental rights."); Kasper v. Nordfelt, 815 P.2d 747, 751 (Utah Ct.App.1991) ("[W]here a child has been released [for adoption] any visitation rights of the child's natural family end with the initiation of such adoption proceedings.").[4]
¶ 14 With respect to adoption in Utah, the legislature has expressly found that
(a) the state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner, in preventing the disruption of adoptive placements....
....

*532 (c) adoptive children have a right to permanence and stability in adoptive placements;
(d) adoptive parents have a constitutionally protected liberty and privacy interest in retaining custody of an adopted child.
Utah Code Ann. § 78-30-4.12(2) (1996). In order to grant a petition for adoption:
(1) The court shall examine each person appearing before it . . . separately, and if satisfied that the interests of the child will be promoted by the adoption, it shall enter a final decree of adoption declaring that the child is adopted by the adoptive parent or parents and shall be regarded and treated in all respects as the child of the adoptive parent or parents.
(2) The court shall make a specific finding regarding the best interest of the child, taking into consideration information ... relating to the health, safety, and welfare of the child and the moral climate of the potential adoptive placement.
Id. § 78-30-9 (Supp.2001). Consistent with the legislature's stated intent to prevent the disruption of adoptive placements, Utah adoption law states, "[T]he adoptive parent or parents and the child shall sustain the legal relationship of parent and child, and have all the rights and be subject to all the duties of that relationship." Id. § 78-30-10 (1996).
¶ 15 In reading the statutes relating to child welfare proceedings and to adoptions so as to harmonize them, we conclude that the juvenile court had no jurisdiction over the Parents or B.B. after the adoption took place. The statutes share a common goal of providing stable, permanent homes for adoptive children and allowing these newly formed families to exist on the same basis as all other families. Hence, once its basis for jurisdiction ended, the juvenile court could not assume jurisdiction over B.B. until and unless the requisite statutory requirements for jurisdiction were reestablished. See Troxel v. Granville, 530 U.S. 57, 68-69, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49 (2000) ("[S]o long as a parent adequately cares for his or her children . . . there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").
¶ 16 The juvenile court's fashioning of a conditional decree of adoption is not consistent with the above principles. Furthermore, a conditional decree of adoption would impose a duty upon the Parents that is not generally required of natural parents; namely, that the Parents either make their child available to visit with non-relatives not of their choosing or be held in contempt of court. See In re A.B., 1999 UT App 315 at n. 1, 991 P.2d 70 (noting that "[v]isitation between grandmother and the children is now at the discretion of the adoptive parents").[5] Therefore, because B.B.'s adoption ended the jurisdiction of the juvenile court, we reverse the juvenile court's Visitation Order.

IV. Attorney Fees
¶ 17 The Parents appeal the juvenile court's award of attorney fees. Because the juvenile court lacked subject matter jurisdiction, it follows that it lacked jurisdiction to assess attorney fees against the Parents. See Burns Chiropractic Clinic v. Allstate Ins. Co., 851 P.2d 1209, 1212 (Utah Ct.App. 1993) ("Because we reverse the trial court. . . we also reverse the court's grant of attorney fees."). Therefore, we reverse the award of attorney fees and order each party to pay its own attorney fees on appeal.

CONCLUSION
¶ 18 This court has jurisdiction because the Visitation Order is a final order and because *533 the Notice of Appeal provided adequate notice that the appeal included the Attorney Fee Order. The juvenile court lacked jurisdiction over this case after B.B.'s adoption, and could not grant an adoption petition conditional on visitation rights in the Grandparents. Therefore, the juvenile court could neither enforce the Pre-adoption Visitation Order after the adoption, nor assess attorney fees against the Parents. Accordingly, we reverse.
¶ 19 I CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge.
ORME, Judge (dissenting).
¶ 20 What actually happened here is this: The adoptive parents and the grandparents, each of whom had had the care of the child at different times, filed competing adoption petitions. The parties ultimately stipulated to a resolution the trial court found to be in the child's best interest: the adoptive parents would adopt the child and the grandparents would have visitation, a schedule for which was specifically agreed to. Once they got what they wantedadoptionthe adoptive parents reneged on their agreement and withheld visitation. When this bait-and-switch was called to the trial court's attention, the court was understandably concerned about the adoptive parents' failure to adhere to their stipulated obligations and the court's order. This failure is particularly troubling in view of the trial court's explicit finding that, but for the visitation agreement, it would not have granted the adoptive parents' adoption petition. Like any court, the trial court here had jurisdiction, even though a final judgment had been entered, to enforce its prior orders. See Utah Code Ann. § 78-3a-901(1) (Supp.2001).
¶ 21 In my view, then, this is not a case about whether conditional adoption is permitted in Utah or about the legal effect of an adoption decree. It is, first and foremost, a case about whether a trial court has the power to enforce an order stipulated to by parties over whom it had jurisdiction and which order was a quid pro quo for the judgment both sides asked it to enter.
¶ 22 Because the trial court clearly has such power and prudently exercised it in this case, I would affirm.
NOTES
[1] K.S. is the sister of B.B.'s biological father.
[2] Similar circumstances exist in divorce proceedings when the court initially determines which parent shall have custody of the children and the visitation rights of the non-custodial parent, subject to the court's continuing jurisdiction to modify those determinations. See Utah Code Ann. § 30-3-5 (Supp.2001).
[3] To avoid contentions over this issue in the future, we strongly encourage appellants to provide in the notice of appeal the caption and date of the orders from which they appeal.
[4] As permitted by Utah Rule of Appellate Procedure 24(i), the Grandparents submitted Utah Code Ann. § 30-5-2(4) (Supp.2001) as supplemental authority, claiming that it provides this court with an independent basis to affirm the juvenile court's decision. However, we do not consider this argument because the proceedings at issue were not conducted pursuant to section 30-5-2(4) and, as a result, the juvenile court did not consider any possible application of the cited statute. In addition, the Grandparents failed to raise this issue below and have not briefed the issue.
[5] The Grandparents cite Cramer v. Petrie, 70 Ohio St.3d 131, 637 N.E.2d 882 (1994), for the proposition that allowing the Parents to disregard the Pre-adoption Visitation Order encourages disobedience of juvenile court orders. We find the facts of Cramer to be distinguishable. In Cramer, the court sought enforcement of a child support order that was violated prior to the child's emancipation, although the enforcement action commenced after emancipation. See id. at 883. In this case, the Order to Show Cause related to failure to comply with an order that was lawful when entered, but not lawful or enforceable after the adoption when the order was allegedly violated.