2004 UT 39

**STATE of Utah, in the interest of B. B., a person under 18 years of age.**

**Susan and Garth Hardinger, Petitioners,**

v.

**Kimberly and Kenneth Scott, Respondents.**

No. 20020404.

Supreme Court of Utah.

May 7, 2004.

Martha Pierce, Salt Lake City, John L. Valentine, Leslie W. Slaugh, Provo, for petitioners.

Brook J. Sessions, Provo, for respondents.

DURHAM, Chief Justice:

¶ 1 This petition concerns whether the juvenile court retains jurisdiction to enforce a pre-adoption visitation order after entering an adoption decree.

## BACKGROUND

¶ 2 B.B., a minor who had been neglected, became subject to the jurisdiction of the juvenile court under Utah Code section 78–3a–104(1)(c). Utah Code Ann. § 78–3a–104(1)(c) (Supp.2003). Pursuant to Utah Code section 78–3a–407 (2002), the juvenile court terminated the parental rights of both of B.B.'s biological parents. Kimberly and Kenneth Scott[1] (the Scotts) and Susan and Garth Hardinger[2] (the Hardingers) filed competing petitions for custody and guardianship under the abuse and neglect statute. *See id.* § 78–3a–104. The Scotts and Hardingers stipulated that the Hardingers would withdraw their petition for custody and guardianship of B.B. in exchange for receiving visitation rights. The juvenile court granted the Scotts' petition for custody and guardianship of B.B. and allowed the Hardingers visitation rights. Two weeks later, the juvenile court issued an adoption decree to the Scotts. The decree of adoption did not mention the pre-adoption visitation order or grant any visitation rights to the Hardingers.

¶ 3 After the adoption, the Scotts terminated B.B.'s visitation with the Hardingers. In response, the Hardingers filed an order to show cause requiring the Scotts to appear in juvenile court to demonstrate why they should not be held in contempt of court for not abiding by the pre-adoption visitation order. The Scotts filed a motion to quash the order to show cause, claiming the juvenile court's jurisdiction ended when the Scotts' decree of adoption was granted. The juvenile court denied the motion to quash and entered two separate orders on the same day: (1) Finding of Fact, Conclusions of Law & Order (the Visitation Order); and (2) Order of Attorney Fees and Judgment (the Attorney Fee Order). In the Visitation Or-der, the juvenile court asserted jurisdiction and ordered the Hardingers' visitation to be restored pursuant to the stipulated pre-adoption visitation order. The Attorney Fee Order required the Scotts to pay the attorney fees incurred by the Hardingers for the order to show cause. The Scotts, through new counsel appealed.

¶ 4 The court of appeals reversed the juvenile court's order restoring visitation rights to the Hardingers on the grounds that the juvenile court lacked jurisdiction to enforce the pre-adoption visitation order. *State ex rel. B.B. (K.S. v. S.H.),* 2002 UT App 82, ¶ 18, 45 P.3d 527. We grant the Hardingers' petition for certiorari and affirm.

## ANALYSIS

### I. ISSUES AND STANDARDS OF REVIEW

¶ 5 This petition presents three issues for review: (1) whether the juvenile court's Visitation Order was appealable as a final order; (2) whether the Attorney Fee Order was adequately raised in the notice of appeal; and (3) whether the juvenile court retains jurisdiction to enforce a pre-adoption visitation order after entering an adoption decree. On certiorari, we review the Court of Appeals' conclusions of law for correctness and grant them no deference. *Reese v. Reese,* 1999 UT 75, ¶ 10, 984 P.2d 987; *see also Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 350 (Utah 1997).

### II. THE VISITATION ORDER WAS A FINAL ORDER

¶ 6 The Hardingers contend that the Visitation Order appealed from was not final because the juvenile court retained jurisdiction to modify the Visitation Order pursuant to subsequent counseling evaluations. We disagree. The Visitation Order was a final, appealable order because it left no question for further judicial action concerning the juvenile court's jurisdiction to enforce the pre-adoption visitation order.

---

1. Kimberly Scott is the sister of B.B.'s biological father.

2. The Hardingers are B.B.'s biological maternal grandparents.

■ ¶ 7 "An appeal may be taken from a ... juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments...." Utah R.App. P. 3(a). "The finality of an order in juvenile proceedings is determined the same way as the finality of an order in other courts." *State ex rel. M.W.*, 2000 UT 79, ¶ 25, 12 P.3d 80. " 'A final, appealable order is one that ends the current juvenile proceedings, leaving no question open for further judicial action.' " *Id.* at ¶ 26 (quoting *State ex rel. T.D.C.*, 748 P.2d 201, 202 (Utah Ct.App. 1988)).

■ ¶ 8 *State ex rel. M.W.* held that although an order may contemplate further action in the case, it is a final, appealable order if it leaves no question on the underlying petition open for further judicial action. *Id.* In *State ex rel. M.W.*, the mother of two minor children was denied custody pursuant to a neglect petition. *Id.* at ¶ 4. We held that "[f]ollowing a neglect adjudication, the juvenile court continues to have jurisdiction over and periodically reviews the case, but that does not mean the neglect adjudication is not final." *Id.* at ¶ 26. A final order "ends the current juvenile proceedings begun by the petition and is a final factual determination of the underlying petition." *Id.* at ¶ 26 (internal quotations omitted). Here, the Visitation Order expressly stated that the juvenile court had subject matter jurisdiction over B.B. and ordered the Hardingers' visitation restored pursuant to the pre-adoption visitation order. The Visitation Order left no question open concerning the juvenile court's jurisdiction to enforce the pre-adoption visitation order. Therefore, we hold that the Visitation Order was a final, appealable decision.

## III. ADEQUATE NOTIFICATION

■ ¶ 9 The Hardingers contend that because the Attorney Fee Order was not specifically mentioned in the notice of appeal the court of appeals lacked jurisdiction to review the order. We disagree.

¶ 10 Rule 3(d) of the Utah Rules of Appellate Procedure requires that "[t]he notice of appeal shall ... designate the judgment or order, or part thereof, appealed from." Utah R.App. P. 3(d). In *Jensen v. Intermountain Power Agency*, we stated that " 'the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case. Respondent is entitled to know specifically which judgment is being appealed.' " 1999 UT 10, ¶ 7, 977 P.2d 474 (quoting *Nunley v. Stan Katz Real Estate, Inc.*, 15 Utah 2d 126, 388 P.2d 798, 800 (1964)). In *Jensen*, we held that the appellant failed to preserve issues on appeal relating to a partial summary judgment when none of the dates recited in the notice in any way related to the partial summary judgment and the appellee was unduly prejudiced by the oversight. 1999 UT 10 at ¶¶ 6, 8, 977 P.2d 474. In *Jensen*, the appellee was prejudiced by the appellant's failure to properly describe the appeal because the appellee elected not to proceed with cross appeals against third party defendants when the appellant failed to raise issues relating to partial summary judgment. *Id.* However, this court has long adhered to the policy that where the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed. *See id.* at ¶ 8; *Price v. W. Loan & Sav. Co.*, 35 Utah 379, 100 P. 677, 679 (1909).

¶ 11 The notice of appeal states that the Scotts "appeal the ruling of the Court on the Motion to Quash and Objection to Setting Hearings without re-opening the file." The notice of appeal identifies "the ruling of the Court on the Motion to Quash" as the final judgment from which the appeal is taken. In response to the motion to quash, the juvenile court entered two separate orders on the same day: the Visitation Order and the Attorney Fee Order. Since the Visitation Order and the Attorney Fee Order were issued on the same day and neither was identified individually as the order from which the Scotts appeal, together they comprise "the ruling of the Court on the Motion to Quash." Moreover, the Hardingers do not claim that they were misled or in any way prejudiced by the failure to list the orders separately in the notice of appeal. While the notice of appeal was not a model of clarity, it adequately notified the Hardingers of the issues

to be reviewed. Therefore, the court of appeals had jurisdiction to review the Attorney Fee Order.

## IV. AN ADOPTION DECREE TERMINATES THE JUVENILE COURT'S JURISDICTION

¶ 12 The Scotts argue that the juvenile court lacked subject matter jurisdiction to enforce the Visitation Order after the decree of adoption was entered. We agree.

¶ 13 The juvenile courts are created by statute and have limited jurisdiction. Utah Code Ann. § 78–3a–102(1), (5) (2002); *State ex rel. Hales*, 538 P.2d 1034, 1035 (Utah 1975); *State ex rel. Graham*, 110 Utah 159, 170 P.2d 172, 175 (1946). Their powers are limited to those specifically conferred by the statute. *State ex rel. Hales*, 538 P.2d at 1035.

¶ 14 This case came under the juvenile court's jurisdiction in accordance with Utah Code section 78–3a–104(1)(c) because B.B. was a minor child who had been neglected. Utah Code Ann. § 78–3a–104(1)(c) (Supp. 2003). Pursuant to Utah Code section 78–3a–407, the juvenile court terminated the parental rights of both of B.B.'s biological parents. Utah Code Ann. § 78–3a–407 (2003). At that point, the juvenile court continued to have exclusive original jurisdiction over B.B. *See id.* § 78–3a–121(1) (Supp.2003). The statute provides that unless it is terminated earlier, the jurisdiction of the juvenile court continues until the child turns twenty-one years old. *Id.* "The continuing jurisdiction of the court terminates . . . upon order of the court." *Id.* § 78–3a–121(2)(a)(i). Therefore, the determinative issue is whether an adoption decree is an "order of the court" that terminates the juvenile court's jurisdiction.

¶ 15 Once the juvenile court is satisfied that the interests of the child will be promoted by adoption, the court must "enter a *final* decree of adoption declaring that the child is adopted by the adoptive parent or parents and shall be regarded and treated in *all*

respects as the child of the adoptive parent or parents." *Id.* § 78–30–9(1) (emphases added). Thus, "[a]fter the decree of adoption is entered, the adoptive parent or parents and the child shall sustain the legal relationship of parent and child, and have all the rights and be subject to all the duties of that relationship." *Id.* § 78–30–10. The legislature has expressly provided that "the state has a compelling interest in providing stable and permanent homes for adoptive children . . . [and] in preventing the disruption of adoptive placements," *id.* § 78–30–4.12(2)(a); that "adoptive children have a right to permanence and stability in adoptive placements," *id.* § 78–30–4.12(2)(c); and that "adoptive parents have a constitutionally protected liberty and privacy interest in retaining custody of an adopted child," *id.* § 78–30–4.12(2)(d). A conditional adoption decree is not consistent with the expressed intent of the legislature.

¶ 16 The legislature has repeatedly expressed the importance of preventing the disruption of adoptive placements: "the adoptive parent or parents and the child shall sustain the legal relationship of parent and child, and have all the rights and be subject to all the duties of that relationship." *Id.* § 78–30–10. The adoption decree not only changed B.B.'s name to B. Scott, but also created a parental bond between her and the Scotts which may not be intruded upon without meeting anew the threshold requirements for court intervention.[3] After the adoption decree, there were no new findings that brought B.B. within the juvenile court's jurisdiction. Therefore, the juvenile court lacked jurisdiction to enforce the pre-adoption visitation order because the decree of adoption superseded the order as a matter of law.

¶ 17 The underlying goal of the adoption statutes is to provide adoptive children with stable, permanent homes and to form new families that are regarded and treated equally in all respects to other par-

---

3. The requirements that must be met in order to invoke the juvenile court's jurisdiction are found in Utah Code section 78–3a–104 (2002). These requirements include a finding that the minor has violated a federal, state, or local law; that

the minor is an abused or neglected child; or that the parental rights of the minor's biological parents are being terminated. Utah Code Ann. § 78–3a–104 (2002).

ent-child relationships. A conditional decree of adoption, allowing the juvenile court to impose its judgment on the adoptive parents as to what visitation is in the best interests of the child, unconstitutionally infringes on the fundamental right of parents to rear their children. See Troxel v. Granville, 530 U.S. 57, 68–69, 120 S.Ct. 2054, 147 L.Ed.2d 49.

> [S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

Therefore, once the legal relationship of parent and child is established, the juvenile court lacks subject matter jurisdiction over the adopted child until new requirements for jurisdiction are satisfied.

### V. ATTORNEY FEES

¶ 18 The Scotts argue that the court of appeals' decision reversing the juvenile court's award of attorney fees should be upheld. We agree.

¶ 19 Because the juvenile courts are creatures of statute, they are courts of limited jurisdiction. State ex rel. Hales, 538 P.2d at 1035. Given that the juvenile court lacked subject matter jurisdiction to hear the order to show cause, the court also lacked jurisdiction to award attorney fees incurred by the Hardingers. See Burns Chiropractic Clinic v. Allstate Ins. Co., 851 P.2d 1209, 1212 (Utah Ct.App.1993) ("Because we reverse the trial court on every ground on which it relied ... we also reverse the court's grant of attorney fees."). We order each party to pay its own attorney fees on appeal.

### CONCLUSION

¶ 20 We affirm the court of appeals on all issues: the Visitation Order was a final, appealable order because it left no area for further judicial action concerning the juvenile court's jurisdiction to enforce the pre-adoption visitation order; the court of appeals had jurisdiction to review the Attorney Fee Order because it was adequately identified in the notice of appeal; and the juvenile court lacked subject matter jurisdiction to enforce a pre-adoption visitation order after entering a decree of adoption. Because the juvenile court lacked subject matter jurisdiction to hear the order to show cause, the court also lacked jurisdiction to award attorney fees to the Hardingers. We expressly hold that the Utah Code does not permit conditional adoptions.

¶ 21 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.